1    Honorable Tana Lin

2

3

4

5

6

7               UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
8                       AT SEATTLE

9   BARONIUS PRESS, LTD., an Isle of Man
    limited company,                          Case No. 2:22-CV-01635-TL
10
                              Plaintiff,       DEFENDANT'S MOTION TO
11                                             DISMISS
          v.
12                                             NOTE ON MOTION CALENDAR:
    FAITHLIFE LLC, a Delaware limited          MARCH 17, 2023
13  liability company,

14                            Defendant.

15

16                   **I.    <u>INTRODUCTION</u>**

17        This case is about the innocent publication of one work—a 1955 English-language

18  translation of a German-language theological text.[1] As the complaint and its exhibits show,

19  and Baronius does not dispute, Faithlife LLC, a small company that publishes electronic

20  resources for Bible study, published this work for no more than three months and two days,

21  selling a whopping 75 copies for a grand total of $387.97 in revenue. Even if Baronius had

22  made these sales itself, its total revenue would have been less than $5,000.

23        Faithlife regrettably made the same mistake in 2013, which the parties previously

24  resolved. But Faithlife has repeatedly explained, and Baronius does not contest, that the

25

26  ---
    [1] *Fundamentals of Catholic Dogma* by Patrick Lynch ("*Fundamentals*"). The original German work is *Grundriss der katholischen Dogmatik* by Ludwig Ott ("*Grundriss*").

    DEFENDANT'S MOTION TO DISMISS - 1
    Case No. 2:22-CV-01635-TL

employees involved in 2013 left the company and different employees made the same error in 2019, leading them to mistakenly believe these works were in the public domain. When the error was discovered, Faithlife removed the works—six months before being contacted by Baronius.

These facts are all within the four corners of the complaint and Baronius' own exhibits. And Baronius does not contest them except through boilerplate allegations, reciting the elements of its asserted claims. Despite this, Baronius has repeatedly rejected Faithlife's offer to pay $15,000 in compensation for these sales—back in 2019 when the alleged infringement occurred, and now—and has filed suit on claims seeking damages many times the amount of actual injury.

This conduct is particularly egregious because Baronius does not appear to own the copyright to the work of which it alleges infringement. Instead, it is clear from the allegations here and admissions from Baronius in a prior litigation that the U.S. copyright to this work vested with its original author, Dr. Patrick Lynch, in 1996, after having existed in the public domain in the United States for decades. Baronius' alleged rights instead derive from the original publisher of the work, Mercier Press, who obtained a license to make an English-language translation of *Grundriss* in 1953. Baronius does not allege that it obtained any rights from Dr. Lynch or his successors. Baronius' claims, all of which derive from its alleged copyright ownership, fail as a result. Specifically, the copyright infringement fails for lack of standing and the remaining DMCA claim fails because Baronius has not plausibly alleged any injury because it has not shown ownership of any exclusive license rights to the copyright.

In addition to this lack of ownership, Baronius' other claims also fail for other reasons. Baronius' DMCA claim fails to state a claim because Baronius lacks standing (because it has suffered no injury) and because the complaint does not plausibly allege that Faithlife had any intent to induce, enable, facilitate, or conceal infringement. Instead, the complaint contains only boilerplate allegations reciting the elements of the intent requirement, while the

uncontested factual allegations and complaint exhibits show that Faithlife made an innocent

mistake, which it explained repeatedly. The state law claims also fail—first because there is

no subject matter jurisdiction if the federal claims are dismissed, but also on their own merits.

As with the DMCA claim, Baronius has merely listed off the elements of these claims as

factual allegations, lacking any actual substance. Such allegations fail to plausibly allege the

elements of these claims and they should be dismissed.

## ARGUMENT

**I.    Baronius has not plausibly alleged ownership of the U.S. copyright to**

**       *Fundamentals* and the copyright infringement claim should be dismissed.**

To state a claim for copyright infringement, Baronius must plausibly allege:

"(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that

are original." *Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see Malibu*

*Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019). A plaintiff who fails

to plausibly allege ownership lacks statutory standing to bring the claim: "To be entitled to

sue for copyright infringement, the plaintiff must be the legal or beneficial owner of an

exclusive right under a copyright." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 884 (9th

Cir. 2005) (internal citation omitted). Baronius does not plausibly allege ownership of any

exclusive right in *Fundamentals*. As a result, both claims related to *Fundamentals* should be

dismissed for lack of standing and for failure to show injury.

Plaintiff fails to establish ownership of any exclusive right in *Fundamentals* because

the Amended Complaint does not allege that Plaintiff acquired ownership of, or any rights to,

*Fundamentals* from the copyright owner after it was restored to the author, Dr. Patrick Lynch,

in 1996 when the U.S. enacted the Uruguay Round Agreements Act ("URAA"), 17 U.S.C.

§ 104A; *see generally Golan v. Holder*, 565 U.S. 302, 132 S. Ct. 873 (2012) (holding that

Section 514 of the URAA did not violate the Copyright Clause or the First Amendment).

DEFENDANT'S MOTION TO DISMISS - 3
Case No. 2:22-CV-01635-TL

Instead, Baronius alleges that it obtained rights from the original Irish publisher of the work pursuant to an agreement from 1953.

Under the URAA, the U.S. copyright in a restored work "vests initially in the author or initial rightholder of the work as determined by the law of the source country of the work." 17 U.S.C. § 104A(b); *see also Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*, 331 F.3d 472, 477 (5th Cir. 2003) ("Accordingly, the Plaintiffs can claim restored copyrights in their films under the URAA only if Plaintiffs are considered 'authors' under [the source country's] copyright law.").[2] That vesting occurs "automatically on the date of restoration." 17 U.S.C. 104A(a)(1)(A).

*Fundamentals* is a restored work. We know this both because, as discussed below, Baronius itself has admitted it is and because, even setting aside those admissions, Baronius' allegations and exhibits establish it is. Because *Fundamentals* is a restored work, the U.S. copyright vested in the original author, Dr. Patrick Lynch, on January 1, 1996. And Baronius has not alleged that it (or Mercier Press) obtained any rights to the U.S. copyright from Dr. Lynch.

### A.    Baronius has admitted that *Fundamentals* is a restored work.

Baronius has admittedly repeatedly that *Fundamentals* is a restored work under the URAA. First, the copyright registration Baronius attached to the complaint is a "Form GATT for a restored work," rather than a Form TX for standard copyright registration. Am. Compl. Ex. 2 (upper right hand corner). This form is "for registration of a copyright claim in a work in which U.S. copyright was restored under the 1994 Uruguay Round Agreements Act (URAA)." U.S. Copyright Office, Form GATT Instructions, *available at*

---

[2] Here, only the author is pertinent because a "rightholder" under the statute is limited to sound recordings, whereas *Fundamentals* is a literary work. *Id.* at § 104A(h)(7); *see also Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*, 331 F.3d 472, 477 (5th Cir. 2003) (internal citations omitted) ("The class of 'initial rightholders' includes only owners of a copyright in a 'sound recording,' e.g., music composers; whereas, the class of 'authors' includes all other creators of works originally copyrighted in foreign jurisdictions.").

DEFENDANT'S MOTION TO DISMISS - 4
Case No. 2:22-CV-01635-TL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

https://www.copyright.gov/forms/formgatti.pdf and attached as Attachment A (describing requirements for copyright registration of a restored work).

Baronius also has admitted the same in a prior case, admitting that *Fundamentals* was "not published in the U.S. within thirty days of its publication in Ireland," and was also "in the public domain the U.S. from at least 1995 until January 1, 1996 when copyright was restored by operation of law under the [URAA]." *See Baronius Press Ltd. v. Saint Benedict Press LLC*, Case No. 3:16-cv-00695-FDW-DCK, ECF No. 85 at 4–5 (W.D.N.C. 2018) ("Baronius WDNC SJ Motion," attached as Attachment B); *see also Id*. ECF No. 94 ¶ 27 ("Baronius' WDNC Second Amended Verified Complaint," attached as Attachment C) ("Upon information and belief, Fundamentals was not published in the U.S. during the 30-day period following its first publication in Ireland, was never in the public domain in Ireland through the expiration of the term of copyright protection in that country, but was in the public domain in the U.S. from 1955, until its copyright was restored on January 1, 1996 under the URAA.").[3] Indeed, Baronius listed as an "undisputed material fact" that the U.S. copyright to *Fundamentals* "was restored by operation of law under the Uruguay Round Agreements Act (URAA)" on "January 1, 1996." Baronius' WDNC SJ Motion at 2.

**B.**     **Even setting aside these admissions, all elements for a "restored work" are satisfied on the pleadings.**

A work qualifies as a "restored work" under the URAA if: (1) at the time the work was created, at least one of its authors was a native or domiciliary of an eligible source country; (2) the work was not in the public domain in the

---

[3] This case also is expressly mentioned in the complaint. Am. Compl. ¶ 38. A court may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Umouyo v. Bank of Am., NA*, No. 2:22-CV-00704-JHC, 2023 WL 1433804, at *2 (W.D. Wash. Feb. 1, 2023) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)). Faithlife requests judicial notice be taken of these documents pursuant to Fed. R. Evid. 201, and attaches them as attachments A and B to this motion.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

eligible source country due to expiration of the protection period; and (3) the work was in the public domain of the United States on the date of the URAA's enactment for one of three reasons: (i) failure to comply with statutory formalities, (ii) lack of protection for sound recordings prior to 1972, or (iii) lack of a copyright relationship between the United States and the country of production at the time of publication, and (4) was not published in the United States during the 30-day period following publication in the eligible source country. *See* 17 U.S.C. § 104A(h)(6)(B)-(D); *Peter Mayer Publishers Inc. v. Shilovskaya*, 11 F. Supp. 3d 421, 423 (S.D.N.Y. 2014).

Baronius' own allegations, here and in the Western District of North Carolina, establish that these requirements are met. Dr. Patrick Lynch, the author of *Fundamentals*, was a "national and domiciliary of Ireland" when *Fundamentals* was "first published in Ireland in 1955." Am. Compl. ¶ 26; see also Am. Compl. Ex. 2 (*Fundamentals* copyright registration listing Dr. Patrick Lynch as the author and stating he was a citizen and domicile of the Republic of Ireland when the work was created). Baronius also has alleged "[u]pon information and belief, *Fundamentals* was not published in the U.S. during the 30-day period following its first publication in Ireland, was never in the public domain in Ireland through expiration of the term of copyright protection in that country, but was in the public domain in the U.S. from 1955, until its copyright was restored on January 1, 1996 under the URAA." Baronius' WDNC Second Amended Verified Complaint ¶ 26; *see also* Baronius' WDNC SJ Motion at 4–5, 14–15 (detailing evidence that "*Fundamentals* was not published or available with 30 days of its publication in Ireland in May 1955" and listing as an "**undisputed material fact**" that *Fundamentals* was "in the public domain in the U.S. from at least 1974 until January 1, 1996, when the copyright was restored by operation of law under the Uruguay Round Agreements Act (URAA).").

DEFENDANT'S MOTION TO DISMISS - 6
Case No. 2:22-CV-01635-TL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**C.** **The U.S. copyright for *Fundamentals* vested in the original author, Dr. Patrick Lynch, in 1996.**

In sum, Baronius has conceded, and its allegations show, *Fundamentals* is a restored work. And there is no dispute that Dr. Lynch is that author—Baronius alleges it in the complaint, ¶ 26, and attaches a registration certificate that states the same, Am. Compl. Ex. 2. Irish law also is clear that an "author" is "the person who creates a work." Copyright and Related Rights Act 2000, § 21 (Act No. 28/2000) (Ir.).[4] By operation of law, the U.S. copyright to *Fundamentals* automatically vested with Dr. Patrick Lynch, the original author, on January 1, 1996 when the copyright was restored.

**D.** **Baronius does not allege that it received any rights to the copyright from the author, Dr. Patrick Lynch.**

Baronius has not alleged, either here or in the prior suit in the Western District of North Carolina, that it obtained any rights to the U.S. copyright from Dr. Patrick Lynch. Instead, Baronius alleges that "*in 2010*, [Baronius] acquired from Mercier Press of Ireland all copyright rights in and to *Fundamentals*." Am. Compl. ¶ 27. But there is no reason to believe that Mercier Press held the U.S. copyright in 2010. Therefore, Mercier Press could not convey ownership of or any exclusive right in the work to anyone.

Mercier Press is the original publisher of Dr. Lynch's *Fundamentals* from back in 1955. *See* Baronius WDNC SJ Motion at 5 n. 1. It originally acquired its right to the work in 1953 from the original publisher of *Grundriss*. *See* Baronius WDNC SJ Motion, Ex. H (attached hereto as Attachment E) (labeled by Baronius "8 January 1953, Mercier Press acquires the right to publish the work published by Herder & Co. (Germany) *Grundriss der Dogmatik*" in English translation."). In that other litigation, Baronius attached that 1953

---

[4] A link can be found at https://www.irishstatutebook.ie/eli/2000/act/28/section/21/enacted/en/html#sec21 and a copy is attached hereto as Attachment D. Faithlife requests judicial notice be taken of this statute pursuant to Fed. R. Evid. 201.

DEFENDANT'S MOTION TO DISMISS - 7
Case No. 2:22-CV-01635-TL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

German-language agreement, along with an English-language translation. *Id.* That agreement is between Mercier Press and Herder & Co., the purported owner of the original copyright in *Grundriss*, granting to Mercier Press the right to publish an English translation of the German-language *Grundriss*. *Id.* There are no allegations in any document in that other litigation, or in Baronius' complaint here, that Mercier Press acquired any rights to *Fundamental* after its copyrights were restored to Dr. Patrick Lynch in 1996, as Baronius has expressly conceded. And the copyright registration for *Fundamentals* conspicuously states that the copyright ownership was acquired by "[a]ssignment of all rights of the English translation transferred by contract from the ***original owner***," not the author.

In light of this, Baronius' allegations fail to plead ownership of or any exclusive right in *Fundamentals*, the allegedly infringing work. Baronius' complaint and documents Baronius itself has filed, and of which this Court may take judicial notice, establish: (1) Baronius' alleged rights were acquired from Mercier Press in 2010; (2) Mercier Press acquired its rights in 1953 from the German publisher of *Grundriss*; but (3) the U.S. copyright to *Fundamentals* belongs to the author, Dr. Patrick Lynch, as of January 1, 1996. There are no allegations that Dr. Patrick Lynch (or his successors) assigned his U.S. copyright, or granted any exclusive right, to Mercier Press or Baronius after January 1, 1996, when the copyright to the restored work vested in its original author under the URAA. Absent any such allegations, Baronius cannot state a claim for infringement of *Fundamentals* because it has not shown that it owns or holds an exclusive right in the copyright and thus lacks standing. This copyright infringement claim should be dismissed.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**II.** **Baronius fails to state a claim for violation of the Digital Millennium Copyright Act.**

    **A.** **Baronius has not plausibly alleged ownership of *Fundamentals* and there has no injury and no standing.**

The DMCA provides a private right of action to "[a]ny person injured by a violation of section 1201 or 1202." 17 U.S.C. § 1203(a). Baronius' only alleged injury is the "infringement of Plaintiff's exclusive right under the preamble to 17 U.S.C. 106 to authorize (or set the terms for) the reproduction and distribution of copies of works it owns, as well as Plaintiff's exclusive right under 17 U.S.C. 106(3) to 'distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership.'" Am. Compl. ¶ 86. As detailed above, *see supra* Sections II.A–E, Baronius has not plausibly alleged that it owns the copyright to, or holds any exclusive right in, *Fundamentals* and does not have standing for its copyright infringement claim. Under similar circumstances, courts have correctly concluded that a plaintiff has not alleged injury to support standing for a DMCA claim when it has not shown that it has rights to the copyright and the only alleged injury derives from said rights. *See, e.g.*, *Shah v. NYP Holdings, Inc.*, 2023 WL 266511, at *4 (N.D. Ill. Jan. 18, 2023) ("Absent an ownership interest in the images, it is unclear how [plaintiff] faced any injury as a result of the allegedly improper attribution of these photographs to IMDb or Facebook."); *Pisciotti v. Brittingham*, 2022 WL 2392198, at *14 n.25 (W.D. Wa. July 1, 2022) ("Finally, [plaintiff] must establish that he owns the copyright in the Work to prove that he was injured by [defendant's] alleged section 1202 violations. *See* 17 U.S.C. § 1203(a). The Court does not mean to suggest that only copyright owners have standing to bring DMCA claims. . . . But [plaintiff]'s complaint makes clear that, at least in this case, whether he was injured turns on confirmation of his ownership.").

Even if Baronius had plausibly alleged ownership of the *Fundamentals* U.S. copyright, it still fails to allege an injury distinct from its alleged injury stemming from the

DEFENDANT'S MOTION TO DISMISS - 9
Case No. 2:22-CV-01635-TL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

copyright infringement claim. Baronius' only alleged injury is to its alleged "exclusive rights" to the copyright under 17 U.S.C. § 106 and a plaintiff cannot recover damages under the DMCA and the Copyright Act for the same injury. *See Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 303 n.5 (D. Conn. 2012) (noting "Plaintiffs do not seek separate damages for their DMCA claim, nor could they" and collecting cases in accord); *Kennedy Stock, LLC v. NLS New York Inc.*, 2019 WL 13096650, at *6 n.6 (S.D.N.Y. Nov. 18, 2019) ("[C]ourts have been reluctant to allow plaintiffs to recover duplicative damages under both the Copyright Act and the DMCA.").

> **B.      Baronius fails to plausibly allege Faithlife knowingly provided false CMI and did so with intent to induce, enable, facilitate, or conceal an infringement.**

Baronius also fails to state a claim for violation of § 1202(a) of the DMCA because it has not plausibly alleged facts that satisfy the intent requirements. § 1202(a) states that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). Thus, § 1202(a) requires that the plaintiff "plausibly allege that the defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *LIVN Worldwide Ltd. v. Vubiquity Inc.*, 2022 WL 18278580, at *5 (C.D. Cal. July 22, 2022) (emphasis in original) (quoting *Krechmer v. Tantaros*, 747 Fed.Appx. 6, 9 (2d Cir. 2018)). "At the pleading stage, the claimant must plead facts plausibly showing that the alleged infringer had this required mental state." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. June 18, 2019).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Baronius fails to plausibly allege such intent because the allegations merely recite the elements of intent required under § 1202(a) of the DMCA.[5] *Morgan v. Associated Press*, 2016 WL 6953433, at *3 (granting defendant's motion to dismiss a § 1202(a) claim and holding that "a formulaic recitation of the elements of a cause of action, including allegations regarding a defendant's state of mind, are not sufficient to satisfy Rule 8."); *see also Mills v. Netflix, Inc.*, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020) (same and collecting cases in accord).

All of Plaintiff's allegations as to intent with respect to CMI are set out below:

- ¶ 4: "Defendant knowingly, and with an intent to induce, enable, facilitate, or conceal its infringement, provided, distributed, and/or imported for distribution false [CMI] in at least seventy-five copies of *Fundamentals* for which Plaintiff holds copyright rights, displaying false CMI that indicated, falsely, that Plaintiff did not hold copyright rights or had the right or authorization to publish *Fundamentals*."

- ¶ 49: "Upon information and belief, Defendant knowingly and deliberately published, provided, and distributed *Fundamentals* with false copyright management information ("CMI") with an intent to induce, enable, facilitate, or conceal the fact that Defendant did not have any copyright rights in *Fundamentals*, or any authorization to copy, advertise, distribute, and sell it in direct violation of the DMCA."

---

[5] Baronius also fails to plausibly allege knowledge, but for purposes of this motion, Faithlife has focused on the clear absence of plausible allegations of intent to induce, enable, facilitate, or conceal an infringement. While Baronius alleges that Faithlife had knowledge through its prior 2013 publication of *Fundamentals*, Baronius also attaches to the complaint Faithlife's repeated explanation that the 2013 employees had left the company by 2019 and the new employees made the same mistake in 2019 in researching the copyrights and mistakenly believed *Fundamentals* to be in the public domain. Baronius has not contested these explanations, or made contrary factual allegations other than boilerplate statements of knowledge, and therefore cannot plausibly allege knowledge either.

DEFENDANT'S MOTION TO DISMISS - 11
Case No. 2:22-CV-01635-TL

- ¶ 83: "In violation of 17 U.S.C. § 1202(a), Defendant, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided CMI for *Fundamentals* that is false."

- ¶ 84: "In violation of 17 U.S.C. § 1202(a), Defendant, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, distributed copies of *Fundamentals* that contained false CMI."

- ¶ 87: "The conduct of Defendant was intentional at a minimum as Defendant was fully aware of the true copyright owners of *Fundamentals*."

Every allegation above is conclusory. There are no allegations at all as to Faithlife's mental state or any specific factual allegations supporting the plausibility that Faithlife intended to induce, enable, facilitate, or conceal infringement. For this reason alone, the Court should grant Faithlife's motion to dismiss Plaintiff's DMCA claim. *See Morgan*, 2016 WL 6953433, at *3.

But these allegations are anything but plausible because they are directly contradicted by Baronius' own factual allegations. Specifically, Baronius alleges that:

- Faithlife stopped publishing *Fundamentals* with the incorrect CMI on its own six months before Baronius contacted Faithlife. Am. Compl. ¶ 39.

- When Faithlife ceased publishing *Fundamentals*, it posted on a public forum that it had learned the CMI was incorrect. *Id*. Specifically, Faithlife publicly stated it had "learned more recently—and definitively—that the book has a new copyright holder" which was why "we had to take the book down (again)." *Id*. Faithlife also stated that it was attempting to work with Baronius to license the book—in other words, affirmatively correcting the copyright information and publicly stating that Baronius was the correct copyright holder. *Id*.

These factual allegations are not consistent with an intent to induce, enable, facilitate, or conceal infringement, and indeed render such allegations implausible. A party that intended to

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

induce, enable, facilitate, or conceal infringement would not voluntarily cease its publication, publicize its own investigation into the copyright, and publicly correct the copyright information.

Baronius also attached exhibits to its complaint showing that Faithlife's publication of *Fundamentals* was accidental and without intent. Specifically:

- Faithlife's then-CEO explained to Baronius that Faithlife's employees had "consult[ed] a copyright renewal database and ma[d]e a possible-incorrect determination, based on not finding the book in the renewal database, and our law-interpretation of the copyright laws." Am. Compl. Ex. 6. The employees had "made a good faith effort to determine the copyright status and ensure the title was in the public domain, using what they thought was a complete and correct process." *Id.*

- The employees who made the previous mistake in 2013 had left the company and "different team members (not employed with [Faithlife] in 2013) consulted the copyright databases again, and not knowing the history on this title, made the same interpretation as the first time." *Id.*; *see id.* ("The issue at hand was this second mistake, made by a different employee. It was unintentional, was remedied as soon as brought to our attention, and resulted in $388 in revenue, and a list-price loss to you of under $5,000. We followed up with an offer to give you all this revenue and more.").

- When initially contacted by Baronius, Faithlife offered its "deepest apologies" and stated that "[t]he posting of the title was inadvert and it was taken down from our website and made unavailable for sale when the error was realized." Am. Compl. Ex. 5.

These statements obviously come directly from Faithlife. But this case is unusual because these statements are (1) attached to the complaint; and (2) uncontested by any non-conclusory factual allegations by Baronius. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (The Court "need not accept as true conclusory allegations that are

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

contradicted by documents referred to in the complaint."). Aside from its generic recitations of the intent elements, Baronius has not alleged facts that Faithlife's explanations are untrue. As such, Baronius' boilerplate allegations are not plausible. This claim for violation of § 1202(a) should be dismissed.

## III. Baronius' state law claims should be dismissed.

### A. If the federal claims are dismissed, the state law claims should be dismissed for lack of subject matter jurisdiction.

Baronius bears the burden of establishing all jurisdictional facts by a preponderance of the evidence. *Allison v. State Farm Mutual Auto Insurance Co.*, 2006 WL 8446021, at *2 (W.D. Wa. Aug. 17, 2006) (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)). Specifically, "a plaintiff's pleading must show affirmatively and distinctly the existence of whatever is essential to federal jurisdiction." *Home Buyers Warranty Corp. v. Leighty*, 2007 WL 4616687, at *6 (D. Ariz. Dec. 28, 2007) (quoting *Kelly v. Echols*, 2005 WL 2105309, at *2 (E.D. Cal. 2005) (cleaned up)).

If the federal copyright infringement and DMCA claims are dismissed, the only remaining basis for subject matter jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332(c)(1). In this context, for diversity jurisdiction, Baronius bears the burden "of showing that it does not appear to a legal certainty that its claim for relief is for less than the statutorily prescribed amount of $75,000." *Id.* (quoting *Floyd v. Oliverson*, 2007 WL 3237728, at *8 (D. Mont. Oct. 31, 2007) (cleaned up)). But here, Baronius cannot establish an amount in controversy that exceeds $75,000 on the remaining state law claims. As to these two claims, the complaint is devoid of any specific damages amounts and—as addressed further below— the alleged injuries are amorphous and undefined. The only specific dollar figure claimed as to the state law claims is an request for "[a]n award of treble damages up to an amount not to exceed three times the actual damages sustained, but not in an amount to exceed twenty-five thousand dollars." Am. Compl. Prayer for Relief ¶ 3(C). There are no other allegations as to

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

the amount in controversy for these claims, not even a conclusory allegation that the amount in controversy is above $75,000 for the state law claims. For jurisdiction, "the court will not reasonably infer allegations sufficient to support federal subject matter jurisdiction because a plaintiff must affirmatively allege such jurisdiction." *Home Buyers Warranty Corp.*, 2007 WL 4616687, at *7 (quoting *Hawai'i Disability Center v. Chenung*, 2007 WL 2823761, at (D. Hawai'i Oct. 1, 2007) (cleaned up)). If the federal law claims are dismissed, the state law claims therefore must also be dismissed for want of subject matter jurisdiction.

**B.** **Baronius has failed to state a claim for tortious interference because it has not plausibly alleged a valid business expectancy or pecuniary harm.**

Baronius fails to state a claim for relief for tortious interference with business expectancy because it fails to plausibly allege *any* of the required elements of the claim. Tortious interference requires: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 280 (Wash. 2006).

The first three elements fail because there are no plausible factual allegations as to any specific expectancies. To show an expectancy, a plaintiff must plausibly allege "a specific relationship between it and identifiable third parties." *Id*. at 352 & n.2. An allegation of an "amorphous group" does not cut it; rather a plaintiff must allege a "relationship between parties contemplating a contract, with at least a reasonable expectancy of fruition." *Scymanski v. Dufaulyt*, 491 P.2d 1050, 1055 (Wash. 1971); *see Pac. Northwest Shooting Park Ass'n*, 144 P.3d at 281 (a plaintiff must "tie [] losses to specific relationships between [plaintiff] and identifiable third parties"). Such allegations are wholly absent here. Instead, Baronius generically points to "third parties, including but not limited to, consumers, churches, priests, school and universities to purchase its traditional Catholic books and Bibles, and for such

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

third parties to continue to purchase from Plaintiff for its future purchases of traditional Catholic books and Bibles." Am. Compl. ¶ 92. There are no allegations as to any specific parties or any specific business expectancies. Nor is there any explanation as to how Faithlife's statements in an online forum—statements that affirmatively directed consumers to Baronius to purchase those works, Am. Compl. ¶ 60—interfered with Baronius' business expectancies with these third parties as to physical copies of those works.

The fourth element—that Faithlife interfered for an improper purpose or used improper means—also is absent. This element requires that the alleged interference be "wrongful by some measure beyond the fact of the interference itself . . . [such as] a statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession." *Pleas v. City of Seattle*, 112 Wash. 2d 794, 804, 774 P.2d 1158, 1163 (1989). The Amended Complaint contains only one relevant allegation—"Defendant through improper purpose and use of improper means caused such interference to the business expectancy of Plaintiff." Am. Compl. ¶ 99. This boilerplate recitation of the element is insufficient.

And lastly, Baronius also has not plausibly alleged any damages. Pecuniary loss is a threshold element for recovery for a claim of tortious interference, and speculative harms, such as reputational harms, are not cognizable. *Tamosaitis v. Bechtel Nat., Inc.*, 182 Wash. App. 241, 250–251, 327 P.3d 1309, 1314 (2014). Baronius has not identified any lost profits, increased costs, lost financing, or any other specific harm. Indeed, there are no allegations at all in the complaint that Baronius has suffered any specific pecuniary loss from any specific consumer. The claim therefore should be dismissed. *See Haglund v. Sawant*, 2018 WL 2216154 at *2 (W.D. Wash. 2018) (dismissing plaintiff's tortious interference claim because it failed to identify "any lost profits, increased costs, or lost financing; [and] has not identified a single investor or lender who declined to enter into a [business] venture" with plaintiff.).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**C.** **Baronius has failed to state a WCPA claim because the alleged acts do not impact the public interest.**

Plaintiff fails to state a claim for relief under the Washington Consumer Protection Act because it is not bringing its claims as a consumer of Faithlife's products. The injuries Plaintiff alleges do not affect the public interest, and Plaintiff fails to articulate any ways in which the injury to Plaintiff affects the public interest in exact same fashion it impacts the Plaintiff.

To plead a CPA claim, a plaintiff must allege "(1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered." *Trujillo v. Nw. Tr. Servs., Inc*., 183 Wash. 2d 820, 355 P.3d 1100, 1107 (2015) "A plaintiff alleging injury under the CPA must establish all five elements." *Michael v. Mosquera-Lacy*, 165 Wash. 2d 595, 200 P.3d 695, 699 (2009). To plausibly allege the third element, a plaintiff must show that additional plaintiffs have been or will be injured in the same fashion. *United Fed'n of Churches, LLC v. Johnson*, 522 F. Supp. 3d 842, 854 (W.D. Wash. 2021), *reconsideration denied*, No. C20-0509RAJ, 2022 WL 1093025 (W.D. Wash. Apr. 12, 2022); *see also Buffets, Inc. v. Klinke*, 73 F.3d 965, 967 (9th Cir. 1996) (holding that a plaintiff must show a substantial portion of the public faces the same harm as the plaintiff in "exactly the same fashion"); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash. 2d 778, 790, 719 P.2d 531, 538 (1986).

In *Buffets, Inc.*, the Ninth Circuit granted summary judgment to defendants on the plaintiffs' claim for unfair competition under RCW 19.86.020 using the "substantial portion of the public" test. 73 F.3d at 970. The plaintiffs alleged that the defendants had improperly acquired their employee manual and recipes in violation of Washington's CPA. *Id.* at 966–67. The Ninth Circuit held that the injuries to the plaintiffs and the industry in general were

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

insufficient to constitute an injury to a substantial portion of the public and therefore did not support a claim under RCW 19.86.020. *Id.*

So too here. Baronius has not made any plausible factual allegations that Faithlife's alleged conduct—allegedly false posts to an online forum that Faithlife was attempting to license certain works from Baronius—has the capacity to injure a substantial portion of the public in the exact same fashion as Plaintiff was injured. Baronius' *only* factual allegation as to harm beyond itself is a conclusory allegation that "[s]uch practices by Defendant have not only damaged Plaintiff, but also consumers, including those consumers that reside in the State of Washington." Am. Compl. ¶ 110. That's it. That single, boilerplate allegation is insufficient to plausibly allege the harm required by the WCPA and should be dismissed. *See Lemelson v. Wells Fargo Bank*, N.A., No. C22-1202JLR, 2022 WL 17092790, at *4 (W.D. Wash. Nov. 21, 2022) (granting motion to dismiss with prejudice where plaintiff "failed to assert facts that would plausibly establish that [defendant]'s acts [we]re capable of repetition and thus affect the public interest"); *Michael*, 165 Wash. 2d at 605, 200 P.3d at 700 (affirming dismissal of WCPA claim where there was "no likelihood or any real or substantial potential that other people will be injured in the same way [plaintiff] was injured.").

## CONCLUSION

Based on the foregoing, Faithlife respectfully requests that the Court dismiss Plaintiff's First Amended Complaint and all claims therein pursuant to Fed. R. Civ. P. 12(b)(6) for failure state a claim upon which relief can be granted.

DATED this 21st day of February, 2023.


K&L Gates LLP

By  *s/ Nicholas F. Lenning*
    Nicholas F. Lenning, WSBA #54740
    Ashley E.M. Gammell, WSBA #50123
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
Phone:  (206) 623-7580

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Fax:  (206) 623-7022
Email:    nicholas.lenning@klgates.com
              ashley.gammell@klgates.com

Attorneys for Defendant
Faithlife Corporation

I certify that this motion contains 5,803
words, in compliance with LCR 7(e)(3).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**Conferral under this Court's Standing Order**

Defendant Faithlife has ***not*** had an opportunity to meet and confer with Plaintiff Baronius concerning this motion to dismiss. New counsel for Faithlife very recently took over defense of this case and has been getting up to speed on the claims, facts, and potential defenses. Regretfully, counsel was unaware of the Court's meet and confer requirement for 12(b) motions until late on February 20th, President's Day, and promptly reached out to counsel for Baronius at 2:28 a.m. PST on February 21st with a description of the arguments presented in this motion. Attachment F.

Faithlife does not believe that the pleading defects described within this motion are capable of being cured with an amended complaint, but Faithlife nonetheless offered to meet and confer promptly with Baronius. Faithlife asked that the parties stipulate to a very short extension to the deadline to respond to the complaint to permit time for the meet and confer process and for Baronius to evaluate whether it believed it could cure any of the deficiencies by amending. Counsel for Baronius responded at 9:21 am PST, stating that "I will not be able to address your last minute request today that you had 14 days to make." *Id*. Counsel further responded that "Had you, you would have known I a[m] not available today because I'm at a conference in Miami all day and will be traveling tonight to return home. I will address your request with our client upon my return and hope to respond to you tomorrow." *Id*. Counsel for Faithlife responded at 10:31 am PST asking again if Baronius would stipulate to a short extension to today's deadline to allow the parties time to meet and confer. *Id*. Counsel for Baronius has not responded. At 3:43 pm PST, counsel for Faithlife again emailed counsel for Baronius confirming that it had not received a response and would proceed with filing the motion to dismiss to avoid missing today's deadline, but reiterating its willingness to meet and confer.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Faithlife still will seek to meet and confer and will file a supplement to this motion with the results of any meet and confer. Faithlife is filing this motion to preserve its arguments in light of today's deadline to respond to the Amended Complaint.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

EXHIBIT 1

Home > Acts > 2000 > Copyright and Related Rights Act, 2000

# Copyright and Related Rights Act, 2000

Chapter 2

*Authorship and Ownership of Copyright*

Interpretation of author.

**21.**—In this Act, "author" means the person who creates a work and includes:

(*a*) in the case of a sound recording, the producer;

(*b*) in the case of a film, the producer and the principal director;

(*c*) in the case of a broadcast, the person making the broadcast or in the case of a broadcast which relays another broadcast by reception and immediate retransmission, without alteration, the person making that other broadcast;

(*d*) in the case of a cable programme, the person providing the cable programme service in which the programme is included;

(*e*) in the case of a typographical arrangement of a published edition, the publisher;

(*f*) in the case of a work which is computer-generated, the person by whom the arrangements necessary for the creation of the work are undertaken;

(*g*) in the case of an original database, the individual or group of individuals who made the database; and

(*h*) in the case of a photograph, the photographer.

