# EXHIBIT 7

| | |
|---|---|
| **From:** | pk@baroniuspress.com |
| **To:** | "Bob Pritchett" |
| **Subject:** | RE: Faithlife / Fundamentals of Catholic Dogma |
| **Date:** | 08 May 2020 22:17:15 |

Dear Mr. Pritchett,

In our letter BPIM-174 dated January 31, 2020 and our email of May 6, 2020, we described your past actions, our claims, the applicable laws and the range of statutory liabilities. For the other possible claims mentioned, liabilities are not yet possible to calculate.

Your offer of $15,000 is nowhere near to even reflecting the minimum collective amount of the statutory damages that we believe are recoverable through a legal action. For an offer to merit serious consideration, it would need to fall within the range of the collective amount of statutory damages recoverable, i.e. your strict liability we outlined in our previous correspondence.

Unfortunately, there seems to be such a disconnect between the parties as to what the liability and quantum of damages are, that it is futile to proceed further with settlement negotiations at this stage.

Kind Regards

Paul Kejik
Director

**Baronius Press Ltd**
St Mary's, The Parade
Castletown,  IM9 1LG
ISLE OF MAN
www.baroniuspress.com

---

**From:** Bob Pritchett [mailto:bob@faithlife.com]
**Sent:** 06 May 2020 20:48
**To:** 'pk@baroniuspress.com' <pk@baroniuspress.com>
**Subject:** RE: Faithlife / Fundamentals of Catholic Dogma

I am sorry to hear that you believe that there was intention or willfulness in this episode.

I believe that anyone -- including a jury -- would have a hard time believing that there was intention or willful infringement, though, because it's not plausible that a company with our near-perfect track record over 28 years would intentionally provoke you a second time, in light of the results of our first experience. Only an accident could cause someone to "stick their hand in a wood-chipper" a second time. :-)

And the different people were involved, making that second mistake quite plausible.

It's also very reasonable for us to make this mistake, since we deal mostly with US Copyright, and with few exceptions, the rules are pretty clear; it's perfectly normal that a company like ours would think that consulting https://exhibits.stanford.edu/copyrightrenewals and following the rules described there and elsewhere online would be reasonable.

We don't have an intellectual property attorney and have never made it a practice to consult one.

In our 28 years of working with Christian publishers, we've made almost zero mistakes on intellectual property rights (other than with you), and have found that the industry is characterized by good will and good intentions, so it's never been necessary to bring attorneys into a conversation.

And the other claims are just ridiculous -- that somehow saying we were trying to acquire rights to your titles (which we honestly desired to do) was interfering with your business? We have been in conversation with you over rights, and we would love to legally license and distribute your titles, as we do for 500 other publishers.

We've never been in litigation on any issue related to Logos or Verbum, because we have a track record of behaving honorably and responsibly.

I'm at a loss as to why your emails are so full of legal citations and threats of expensive litigation, and I'm disappointed that you will not accept my apology and simply tell me what number will satisfy you.

It seems that you want me to make an offer, but we already did, and you told us it was inadequate. The next step is for YOU to make a counter-offer. Isn't that how negotiation works?

Or am I to just keep sending bigger numbers until you say yes? I can do that if you'd like, but it seems like a tedious process.

I don't know if you're really excited about litigation -- which seems expensive and time consuming -- or just want to use the threat of it to provoke a larger settlement offer. Which is fine, I suppose, and normal practice in an adversarial conversation. (Though I wish we could be not adversarial, and we could humbly apologize and make it right with a number you suggest.)

But if it does go to litigation, more money will likely go to attorneys than to you.

And I believe that in front of a jury, our $388 of revenue collected from a mistake will not incentivize some massive award.

I strive to act honorably, and to be principled in our actions as a business -- and more importantly, to act kindly. I trust that you feel the same way.

I'm sorry about what happened; I'm sorry our team didn't response as you would have liked sooner, and that I wasn't brought into the issue sooner so that I could make a personal apology

sooner. But the past is gone, and I can't change it -- and the principal actor in this last episode doesn't even work for us any longer.

I can't imagine that you'd want to initiate litigation without even proposing a settlement number, which seems a lot faster and more reasonable.

What is it?

I'll make one more attempt myself. Because, while we don't spend much time talking to attorneys, we have done some research here, and we've been following copyright law and the results of copyright lawsuits for a while.

The first episode with you was settled -- so it's already resolved.

The issue at hand was this second mistake, made by a different employee. It was unintentional, was remedied as soon as brought to our attention, and resulted in $388 in revenue, and a list-price loss to you of under $5,000. We followed up with an offer to give you all this revenue and more.

Your understanding of statutory damages is incorrect; it's "per work infringed" not per copy sold. There's a nice overview here:
https://www.stimmel-law.com/en/articles/statutory-damages-copyright-infringement

And 'an infringer that demonstrates he or she "was not aware and had no reason to believe that his or her acts constituted an infringement" can have the damages reduced to $200.'

More precisely, the actual law:
https://www.copyright.gov/title17/92chap5.html#504

"...an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are li-able jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just."

I think you'd have a hard time convincing a court of the 'willfully' element required to escalate to the $150,000 damages (per work, not per copy sold), and would risk having statutory damages set as low as $200:

"(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."

I am practical as well as principled: I am willing to raise our offer to $15,000 to avoid the hassle of litigation. I think this is more than fair in light of what happened and the story that led to it.

FWIW, I do have enough personal experience and have heard enough stories from other business owners that I am not intimidated by legal sabre rattling. We've been through discovery before (as an ancillary to a suit between two different third parties), and we know there's nothing to fear in a lawsuit except wasted time and attorney's fees, because we do behave well, we are honest in our dealings, and there aren't any smoking guns in our documents, because we work very hard every day to do the right thing.

I do want to settle. I do want to avoid litigation. But please don't be mistaken into thinking we're afraid of it, or that all this citing the names of laws or multiplying maximum damages by 75 is scaring us. We've consulted an attorney, and we know these numbers are beyond unlikely to be awarded -- if you could even win. We aren't intimidated. It's just wasteful, and I hate waste, so tell me your reasonable number, and the money can go to you, not attorneys.

We aren't some deep pockets organization that's going to write a massive check over an incident where we collected $388 dollars. We sell Bible software to pastors and churches (not the world's most lucrative market!), and presumably are motivated by the same concern for our customers and the Church that you are.

I hope we can come to some reasonable accommodation, and look forward to your acceptance of our generous offer, or a reasonable counter-proposal.

-- Bob

---

**From:** pk@baroniuspress.com <pk@baroniuspress.com>
**Sent:** Wednesday, May 6, 2020 9:42 AM
**To:** Bob Pritchett <bob@faithlife.com>
**Subject:** RE: Faithlife / Fundamentals of Catholic Dogma

Dear Mr. Pritchett,

In your email of April 15, 2020, you mentioned that in 2013, Faithlife (at that time trading as Logos) had infringed on our copyrights for *Fundamentals of Catholic Dogma ("Fundamentals")*. There are similarities between the infringing act that took place in 2013 and the latter one in 2019.

In 2013, when we pointed out your infringing activity to Faithlife, we were initially given incorrect sales figures i.e. 555 units instead of the later correct figure of 1,689 units, yet we still listened and accepted your explanation for the infringement. While we believed that the lost sales were in the region of $60,000 (not taking into account the damage to the value of the title or our brand), we compromised with your company to close the matter and accepted a settlement of $20,000. During those settlement negotiations, your employees had asked if Faithlife could licence *Fundamentals* and other best-selling titles from Baronius Press. In our letter Ref: BP208 dated November 25, 2013, we politely refused the licencing offer, explaining that the lost sales revenue we would suffer on our editions would significantly outweigh the low royalty rate Faithlife was proposing.

In December 2019, we discovered that Faithlife had not only infringed our copyrights again

(for which we received no apology and explanation at the time), but had also made false public claims that it was in contact with Baronius Press for licencing our *Knox Bible*. When we initially contacted Faithlife regarding this issue, we were again given an incorrect number of copies that had been distributed and/or sold. This was then revised upwards in the same fashion that had occurred during the previous infringement in 2013, but only after we had questioned the figures in our telephone call to Craig St. Clair and Bethany Olsen of Faithlife on January 13, 2020.

We also believe that the comments made by Faithlife sales staff on your public forum have irreparably damaged the Baronius Press brand and hampered and frustrated the development of new customer's relations which would provide us with repeat sales over many years. It is also our understanding that Faithlife staff employed unfair and deceptive methods to gain sales for Faithlife at our expense.

You claim in your email of April 15, 2020 that what you actually did was "to consult a copyright renewal database and make a possibly-incorrect determination, based on not finding the book in the renewal database, and our lay-interpretation of the copyright laws". It is not credible that a company of the size of Faithlife, with 450 employees does not have the resources or legal assistance to ensure it does not infringe the intellectual property of others.

Baronius Press has built a reputation for exclusively publishing some of the finest traditional Catholic titles of the 20th century and has never licenced any of its exclusive titles. We believe that the damages to our sales and our brand, when we are in the early stages of a prospective sale of the company, will certainly have impacted the future value of the company on which a sale price will be agreed.

In your email of April 20, 2020 you requested that we propose the settlement amount that would satisfy us. At this stage, we can only reiterate our understanding of the liabilities that Faithlife has, which we will be seeking to recover through a lawsuit. Both wilful copyright infringement and placement of false copyright management information allow us to seek statutory damages.

The statutory damages for wilful copyright infringement range between $750 and $150,000 for each copyright infringed and *Fundamentals* carries two copyrights (underlying German original and the English translation), both registered with the US Copyright Office prior to the infringement. The statutory damages available for each violation of copyright management information range between $2,500 and $25,000. Each time Faithlife distributed an infringing copy of *Fundamentals* with false copyright management information, it violated the act. The liability for the acknowledged 75 violations of this statute is from $187,500 to $1,875,000. The recovery of legal costs by the prevailing side is possible for both of these statutes. Based on our recent experience, we estimate the legal costs for such litigation to be in the region of $200,000 to $500,000.

We also believe that there may be other claims we can bring against Faithlife such as Unfair Competition under section 43(a) of the Lanham Act (federal), Fraudulent Misrepresentation (Restatement (second) of Torts – § 525), Tortious Interference with Business Relationship and Expectancy and Unfair and Deceptive Acts and Practices under

Washington State Law. The scope of the claims will only become apparent once the discovery process starts and the appropriate evidence is discovered. The full extent of the damages will then be determined by damages expert(s) and we believe that it will be a significant sum.

The sheer volume evidence of wilful copyright infringement and placement of false copyright management information is compelling and substantially complete. Your previous infringement on the same title, the false public statements damaging our company on your forums, the misreporting of the number of copies distributed and the large disparity between our companies will be presented at trial and it will be up to a jury to consider and award appropriate damages.

Any offer of settlement from Faithlife should reflect the above and should also consider the inconvenience of litigation and the press coverage it will inevitably bring in that it is Faithlife's second known acts of infringing Baronius Press' copyrights.

Now that litigation is likely, we are providing notice to Faithlife (including the Logos and Verbum brands) that it is obligated to preserve all discoverable data in its control pertaining to Faithlife infringement of Baronius Press' intellectual property and other possible claims mentioned in this letter. All written, audio, video and electronic data is discoverable. Such discoverable data includes, but is not limited to, all discoverable data belonging to Faithlife, its employees, third-party vendors, users of its website and blog, and former and current employees, independent contractors and related parties of Faithlife. Such discoverable data to be preserved by Faithlife is discoverable data stored data located and stored on, including, but not limited to: (i) business and personal computers, (ii) business and personal computer networks, (iii) business and personal computer servers, (iv) business and personal VoIP data, (v) business and personal voice messages, (vi) business and personal cell phones, (vii) business and personal electronic mail, (viii) business and personal private electronic mail, (ix) business and personal text messages, (x) all paper files; (xi) all drafts and final versions of the aforementioned literary works in all formats; (xii) all accounting, shipping and sales data for the aforementioned literary works; (xiii) all websites and social media content and blog postings related to the aforementioned literary works; (xiv) all drafts and final versions of advertisements and marketing materials in all formats; (xv) business and personal videos, (xvi) business and personal video surveillance, and (xvii) any and all other storage devices of discoverable data.  You are also under an obligation to prevent the destruction of any discoverable data, including but not limited to, asking third parties with discoverable data not to delete it and to preserve it as litigation is likely.

We look forward to hearing from you.

Yours sincerely,


Paul Kejik
Director

**Baronius Press Ltd**
St Mary's, The Parade
Castletown,  IM9 1LG

ISLE OF MAN
www.baroniuspress.com

---

**From:** Bob Pritchett [mailto:bob@faithlife.com]
**Sent:** 20 April 2020 18:17
**To:** 'pk@baroniuspress.com' <pk@baroniuspress.com>
**Subject:** RE: Faithlife / Fundamentals of Catholic Dogma

Would you kindly propose a settlement amount that would satisfy you?

-- Bob

---

**From:** pk@baroniuspress.com <pk@baroniuspress.com>
**Sent:** Monday, April 20, 2020 9:12 AM
**To:** Bob Pritchett <bob@faithlife.com>
**Subject:** RE: Faithlife / Fundamentals of Catholic Dogma

Dear Mr. Pritchett,

Your offer does not represent the true scale of your conduct, the damage caused and the applicable remedies the law provides as outlined in our letter of January 31, 2020 and as such, we are not accepting your offer.

Kind Regards

Paul Kejik
Director

**Baronius Press Ltd**
St Mary's, The Parade
Castletown,   IM9 1LG
ISLE OF MAN
www.baroniuspress.com

---

**From:** Bob Pritchett [mailto:bob@faithlife.com]
**Sent:** 15 April 2020 02:52
**To:** 'pk@baroniuspress.com' <pk@baroniuspress.com>
**Subject:** Faithlife / Fundamentals of Catholic Dogma

Dear Mr. Kejik,

I am very sorry that we accidentally distributed *Fundamentals of Catholic Dogma* electronically last year.

I am relatively new to this situation; my team was handling it and only recently brought the whole saga to my attention.

You cite Craig St. Clair's April 24 and April 25, 2019 posts as evidence that we "purposefully published *Fundamentals* with full knowledge that it was without our permission and that it would infringe our copyrights."

This is a misunderstanding, and does not represent our intentions or knowledge. I'm told that what we actually did was to consult a copyright renewal database and make a possibly-incorrect determination, based on not finding the book in the renewal database, and our lay-interpretation of the copyright laws.

Our team members made a good faith effort to determine the copyright status and ensure the title was in the public domain, using what they thought was a complete and correct process.

I am sorry that they did not take the time to contact you as part of this process. I wish they had.

It is particularly embarrassing that we made this mistake after having made it previously in 2013; I'm told that it is because of a change in personnel, and that different team members (not employed with us in 2013) consulted the copyright databases again, and not knowing the history on this title, made the same interpretation as the first time.

Craig St. Clair is no longer employed at Faithlife, but we have made sure multiple team members and our management team are very aware of this situation and taken steps to ensure it will never happen again.

We distribute more than 150,000 different titles, licensed from hundreds of rights holders, and, since we started in 1991, have been scrupulous about honoring both the letter of the law and the spirit. We desire to act honorably in all ways, and the suggestion that we would have done this intentionally is implausible both because this is the first accusation of this nature in 29 years of distributing 150,000 titles, and because there's no gain in provoking a legal dispute! <smile>

I trust that you desire to act honorably as well, and I hope that you are willing to accept our sincere apologies, to forgive this mistake, and accept our offer of restitution.

We want to make this right.

It is my understanding that we collected around $388 from this mistake, and that at your full retail price this could represent a worst-case loss of gross revenue to you of $4,496.25.

Will you accept $10,000 and our apologies as a settlement for this dispute?

Sincerely,

Bob Pritchett
President/CEO, Faithlife

----
Bob Pritchett
President/CEO
Faithlife - www.faithlife.com

My Newest Book: http://StartNextNow.com
http://www.linkedin.com/in/bobpritchett