UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BARONIUS PRESS, LTD., an Isle of Man limited company,

                                  Plaintiff,

    v.

FAITHLIFE LLC, a Delaware limited liability company,

                                Defendant.

Case No. 2:22-CV-01635-TL

DEFENDANT'S MOTION TO DISMISS

NOTE ON MOTION CALENDAR: JUNE 16, 2023

## I.    **INTRODUCTION**

This case is about the innocent, very limited distribution of one work—an English-language translation of a German-language theological text published in 1955. As the plaintiff Baronius Press, Ltd. itself alleges, defendant Faithlife LLC published this work for two months, voluntarily pulled it six months before being contacted by Baronius, and distributed a total of 75 copies. In all, Faithlife received $388 in revenue, which Baronius does not contest.

For this publication, Baronius brings four claims—filed days before the expiration of the statute of limitations (applying the discovery rule). Specifically, Baronius alleges that the publication of that 1955 work infringed two different copyrights—an exclusive right in the original German work, *Grundriss der kotholischen Dogmatik* by Ludwig Ott ("*Grundriss*"), and the copyright to *Fundamentals of Catholic Dogma* by Dr. Patrick Lynch

DEFENDANT'S MOTION TO DISMISS - 1
Case No. 2:22-CV-01635-TL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

("*Fundamentals*"). Baronius also brings claims under the Digital Millennium Copyright Act for the reproduction and distribution of "false copyright management information"—specifically the copyright information from the copyright page of the 1950s book Faithlife scanned. But Baronius has not plausibly stated a claim as to any of its four claims.

**Count 1: *Grundriss* copyright infringement.** For *Grundriss*, Baronius has alleged (and its exhibits show) that it owns, at most, only a limited exclusive right to create, distribute, and publish a *new* English translation of *Grundriss*. Baronius does not, and cannot, allege that it possesses any exclusive rights to prior English translations, including *Fundamentals*. This is because of the limited right granted to Baronius, and because the assignment contracts expressly forbid Baronius from publishing *Fundamentals*. Because Baronius alleges only that Faithlife published the 1950s *Fundamentals*, and not Baronius's new translation which was published in 2018, Baronius has not plausibly alleged infringement of a right it possesses and therefore lacks standing. The claim therefore should be dismissed.

**Count 2: *Fundamentals* copyright infringement.** For *Fundamentals*, Baronius has failed to plausibly allege ownership of the copyright or any exclusive right. As a restored work under the Uruguay Round Agreements Act, the U.S. copyright to *Fundamentals* vested by law in the "author." The author, both in fact and as Baronius has alleged, is Dr. Patrick Lynch. While Baronius has alleged that Mercier Press (the original publisher from which Baronius's rights allegedly derive) was the first copyright owner because it paid Dr. Lynch a translation fee, this is both irrelevant (because the URAA specifies copyrights are restored to "authors" and, even accepting Baronius's allegations, Mercier Press would not be an "author" under Irish law) and incorrect (because Baronius has not pled plausible facts that could establish Mercier Press as the first copyright holder under Irish law). Baronius's allegations and exhibits instead show that the U.S. copyright vested by law with Dr. Patrick Lynch, the author, and Baronius has not alleged that Dr. Lynch assigned any of his rights in writing to Mercier Press or Baronius. Because Baronius's conclusory allegations of copyright ownership

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

are contradicted by law, its own factual allegations, and the exhibits to its complaint, Baronius has failed to plausibly plead ownership of the *Fundamentals* copyright and therefore lacks standing. This claim should also be dismissed.

**Counts 3 and 4: DMCA claims for distribution of false CMI.** Lastly, Baronius has failed to state a claim as to its DMCA claims for at least two reasons. First, if the Court dismisses Counts 1 and 2, Baronius lacks standing to pursue its DMCA claims. This is because Baronius's alleged injuries derive entirely from ownership of the copyright (for *Fundamentals*) or exclusive right (for *Grundriss*). Second, Baronius has not pled plausible factual allegations to satisfy the intent requirement of Section 1202(a)—specifically that Faithlife acted "with the intent to induce, enable, facilitate, or conceal infringement" when it provided the CMI. Instead, Baronius has alleged only boilerplate recitations of the intent elements, while other factual allegations, complaint exhibits, and Faithlife's uncontested statements (which are attached to the complaint) directly contradict any plausible intent and instead show that Faithlife made an innocent mistake.

Because Baronius has failed to state a claim on any of the four claims it brings, and now has had two chances to amend while rejecting a third opportunity, the Court should dismiss these claims with prejudice.

## II.   STATEMENT OF FACTS

### A.   Baronius's Alleged Ownership of an Exclusive Right for *Grundriss*

Baronius alleges the following:

*Grundriss* is a German work, authored by Ludwig Ott, and published in 1952 by Verlag Herder & Co. Plaintiff Baronius's Second Amended Complaint, Dkt. # 48 ("SAC") ¶ 28. An English-language version was created in 1955, *Fundamentals*. SAC ¶ 37. In 1985, Regina Ott, Ludwig's sister and sole heiress, donated his estate to "Seminary of the diocese of Eichstätt" (which Baronius labels the "Seminary"). SAC ¶ 30. The actual 1985 "assignment

DEFENDANT'S MOTION TO DISMISS - 3
Case No. 2:22-CV-01635-TL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

of rights" document conveys rights to "Priesterseminar der Diözese Eichstätt." SAC Exh. 2; Dkt. # 48-3 at p. 6.

In 2008, a *different "*Seminary," "Bischöfliches Seminar Eichstätt, Collegium Willibaldinum," made arrangements with nova et vetera ("Nova") to create and publish a *new* English-language translation of *Grundriss*. SAC ¶ 32; Dkt. # 48-3 at p. 11. This contract between Nova and the Seminary states that "the older version of the text in the former form [i.e. *Fundamentals* (1955)] is by no means reused." Dkt. # 48-3 at p. 12. In 2009 Nova conveyed this same right, to create and publish a new English-language translation, to Baronius. SAC ¶ 33, Exh. 2; Dkt. # 48-3 at pp. 13–15.

Baronius also alleges that the "Seminary" granted exclusive rights for *Grundriss* to Nova in 2004. SAC ¶ 32. Baronius does not explain the discrepancy between the two "Seminary" entities, or posit which entity conveyed its rights in 2004.

Baronius published a fully-revised new English-language translation of *Grundriss* in 2018 (the "2018 Licensed Edition"). SAC ¶ 44. Baronius does not allege that Faithlife published the 2018 Licensed Edition of *Grundriss*. Rather, Baronius only alleges that Faithlife published *Fundamentals* (1955). SAC ¶ 49.

**B.    Baronius's Alleged Ownership of *Fundamentals***

Baronius alleges the following:

*Fundamentals* is a 1955 translation of *Grundriss*. SAC ¶ 36. It is an original work of authorship, authored by Dr. Patrick Lynch. SAC ¶ 36, 38. Baronius alleges Dr. Lynch was "commissioned" by Mercier Press to create the translation "as work for hire." SAC ¶ 36. Baronius alleges that Dr. Patrick Lynch is the "author" of *Fundamentals*. SAC ¶ 25, Table 1. Baronius does not allege that Dr. Lynch was an employee or under a contract of service or apprenticeship with Mercier Press. Nor does Baronius allege (or attach) any writing by Dr. Lynch that assigns any exclusive right or license to Mercier Press, Baronius, or any of its

DEFENDANT'S MOTION TO DISMISS - 4
Case No. 2:22-CV-01635-TL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

predecessors in interest. Baronius alleges that it acquired all rights to *Fundamentals* from Mercier Press.

### C. Faithlife's Publication of *Fundamentals* in 2019

Baronius alleges that Faithlife published "at least seventy-five copies" of *Fundamentals* over three months, from March 24, 2019 to June 26, 2019. SAC ¶ 4, 49, 55. Specifically, Baronius alleges that Faithlife published the Second Edition of *Fundamentals* from March 1957. SAC ¶ 73. Baronius attached emails from Faithlife to Baronius to its complaint that show Faithlife's publication of *Fundamentals* was accidental and without intent. SAC ¶ 62, 65, Exh. 6–7; Dkt. # 48-8–9. Specifically, that new Faithlife employees, not employed from 2013 to 2015, consulted a copyright renewal database rather than a copyright registration database under the mistaken belief that the initial 28-year protection under the 1909 Copyright Act for a work published in the 1950s would have lapsed long ago. SAC ¶ 67, Exh. 7; Dkt. # 48-8 at p. 3, 9. Baronius does not contradict Faithlife's explanations in the SAC.

## III. ARGUMENT

### A. The SAC fails to state a claim for copyright infringement (Counts 1 and 2).

To state a claim for copyright infringement, Baronius must plausibly allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019). The SAC asserts two counts of copyright infringement.

For *Grundriss*, Baronius has failed to plausibly allege the second element. Specifically, although Baronius attaches documents to the SAC that appear to show that it has been assigned an exclusive right to the *Grundriss* copyright, Baronius has not alleged that Faithlife infringed that right. Indeed, the SAC conclusively shows that Faithlife has not.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

For *Fundamentals*, Baronius has failed to plausibly allege that it owns a valid copyright or any exclusive right for at least two reasons. First, by statute, the copyright for this restored work vested automatically in the author, Patrick Lynch, and Baronius has failed to show that the author assigned that right to anyone. Second, even if the copyright could have vested in anyone aside from the author, Baronius has failed to plausibly allege that it has ownership of the copyright under Irish law.

**B.**     ***Grundriss*: Baronius has not plausibly alleged that Faithlife infringed its exclusive right (Count 1).**

     *1. Baronius has alleged, and its exhibits prove, that it owns an exclusive right to a new work—a new and revised edition of Fundamentals.*

Baronius concedes that Seminary Eichstätt is the copyright owner of *Grundriss.* SAC ¶¶ 28–35, Exh. 2; Dkt. # 48-3 at pp. 6–8. Instead, Baronius has alleged that it possesses an exclusive right to *Grundriss*, specifically that it "obtained the exclusive right to reproduce, adapt, and distribute *Grundriss English Edition*." SAC ¶ 33; *see also* SAC ¶ 92 ("Plaintiff is, and has been since 2009, the exclusive licensee of the rights to reproduce, adapt and distribute an English-language edition of the German-language original work *Grundriss* ('*Grundriss English Edition*')."); ¶ 118. That right was obtained from *nova et vetera* ("Nova"), a publishing company, that obtained the same right from the copyright holder, the Seminary, in 2008. SAC ¶ 32 ("In November 2008. Seminary granted the rights to an English-language edition of *Grundriss* ('*Grundriss English Edition*') to Nova for the remaining duration of the copyright.").

Baronius further alleges that, "[d]ue to errors in the original English translation which undermined the reputation of *Fundamentals*, the exclusive license from Nova required Plaintiff to publish *Fundamentals* only after it had been revised, corrected and approved by Nova." SAC ¶ 43. In other words, Baronius alleges that it possesses an exclusive right to create and publish a new English translation of *Grundriss*, which Baronius labels *Grundriss*

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*English Edition*. Baronius published that revised new work, presumably after receiving approval, in 2018. SAC ¶ 44 ("In April 2018, Plaintiff published its new fully revised and updated edition of *Fundamentals*."); *see also* SAC Exh. 9; Dkt. # 48-10 (containing the copyright information page from Baronius's new 2018 edition stating "This edition first published in 2018 by Baronius Press" and "This new edition by Baronius Press is based on the original translation by Mercier Press. It has been fully revised and updated and it conforms to the latest 11th German edition of *Grundriss der Katholishcen Dogmatik* published by nova & vetera, Bonn, Germany in 2010.").

The exhibits attached to the SAC confirm these allegations and add further clarity. Exhibit 2 contains both the 2008 contract between the Seminary and Nova and the 2009 contract between Nova and Baronius. SAC Exh. 2; Dkt. # 48-3 at pp. 12–19. The 2008 contract is in German, but Baronius attached an English translation. It states:

> "In addition to the publishing contract dated 6/11. July 2004 the publisher nova vetera e.K., Bonn, hereby also the right for an English-language edition of the Grundrisses der Dogmatik of Prof. Dr. Ludwig Ott.
>
> The bishop's seminary of St. Willibald in Eichstatt receives a copy of every edited version of the English version.
>
> In light of the controversy surrounding the English edition in the 1960s, the publisher nova & vetera e.k. ***To ensure that the old version of the text in the former form is by no means reused.***
>
> Eichstatt, 10 November 2008"

SAC Exh. 2; Dkt. # 48-3 at p. 12 (emphasis added).[1] As the above makes clear, the right granted to Nova from the Seminary was limited to creating a *new* English translation and Nova was expressly forbade from publishing "the old version of the text in the former form"

---

[1] This contract references a 2004 contract between Nova and the Seminary. Baronius alleges that, in this contract, "Seminary granted exclusive controlling rights for *Grundriss* to nova et vetera ('*Nova*'). This contract is not attached to the complaint or otherwise referenced, but it is not relevant to the issues here.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

(i.e. *Fundamentals* as translated by Patrick Lynch in 1955). Nova did not obtain any rights to publish the original 1955 version of *Fundamentals*, or any other prior versions.

The 2009 contract between Nova and Baronius conveys the same limited right to create and publish a new English translation. Specifically, Section 1 states that Baronius is granted "the exclusive license ***to translate*** and publish the Work in volume form in the ENGLISH language . . .". SAC ¶ 33 Exh. 2, Dkt. # 48-3 at p. 13 (emphasis added).[2] Section 2 states "[t]he Publishers will have a period of three years from the date of this contract in which to ***prepare*** an English translation of the 11. Edition. This must be submitted for approval by the Publishers to the Proprietors prior to publication." *Id.* at p. 13 (emphasis added). Section 9 clarifies that "All Rights in the Work, other than those specifically granted to [Baronius] under this Agreement, are reserved by [Nova]." *Id.* at p. 14. Thus, as with the 2008 Contract, the 2009 Contract granted Baronius the right to translate and publish a *new* English translation of *Grundriss*, specifically one based on the new 11th edition of the German-language *Grundriss*. The 2009 contract does not grant Baronius any rights to publish other works, including the existing 1955 edition of *Fundamentals*—only the right to prepare a new translation, subject to approval by Nova before publication.

In sum, Baronius does not possess an exclusive right as to the original work *Fundamentals* that was first published in 1955. Baronius does not allege such a right and the exhibits Baronius has attached conclusively prove it. Indeed, Baronius's rights granted from the copyright holder expressly exclude the 1955 *Fundamentals* edition, and Baronius admits that it is barred by contract from publishing that version.[3] Instead, Baronius alleges (and its

---

[2] "The Work" is defined as "*Grundriss der katholischen Dogmatik*" by Ludwig Ott. Exh. 2.
[3] *See also* FAC Exh. 8, Dkt. # 13-9 at p. 2 (Jan. 31, 2020 letter from Baronius to Faithlife stating "[U]nder the terms of our exclusive license, Baronius was prohibited from publishing *Fundamentals* until the text had been revised, corrected and approved by the German copyright holder for faithfulness to the latest 11th edition of the original work *Grundriss der katholischen Dogmatik* ('*Grundriss*'). After several years of extensive re-translation and editorial works, Baronius obtained a new *Imprimatur* and published this revised and updated edition of *Fundamentals* on April 23, 2018.").

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

exhibits show) that it possesses an exclusive right to publish a *new* English translation of *Grundriss*. Baronius alleges that it published this new version in 2018. *See* SAC ¶ 44, Exh. 9; *see also* FAC Exh. 8; Dkt. # 13-9 at p. 2 (describing the new translation as requiring "several years of extensive re-translation and editorial works").

### 2. Baronius alleges that Faithlife published the 1955 Fundamentals—not Baronius's newly revised 2018 work.

Baronius does not allege that Faithlife published Baronius's new 2018 translation of *Grundriss*. Instead, Baronius alleges that Faithlife published the "The English-language translation of *Grundriss* entitled *Fundamentals of Catholic Dogma* ('*Fundamentals*')" that "was first published by Mercier Press in Ireland in 1955." *See* SAC ¶¶ 36, 37, 49; *see also* ¶ 96 ("Defendant willfully, intentionally and purposefully reproduced and distributed *Grundriss English Edition, and/or a substantially similar reproduction thereof*.").

This is further confirmed by both the exhibits attached to the Second Amended Complaint, as well as the First Amended Complaint. SAC Exhibit 9 shows Faithlife's publication of *Fundamentals*, which specifically lists "Copyright 1957 B. Herder Book Company"—i.e. the copyright information from the 1957 edition of the book that Faithlife scanned and published (the same edition Faithlife mistakenly published in 2013 before the new 2018 translation had even been published).[4] Dkt. # 48-10 at p. 2. Similarly, Exhibit 8 to the First Amended Complaint is a January 31, 2020 letter from Baronius to Faithlife.[5] Dkt. #13-9 at p. 2. In it, Baronius expressly states "The original translation of *Fundamentals that*

---

[4] This is seen even clearer in Exhibit 7 to the First Amended Complaint, which shows the complete copyright pages from the scanned copy of *Fundamentals* that Faithlife published—confirming that it was the Second Edition, March 1957 translated by Patrick Lynch. This Exhibit was omitted from the Second Amended Complaint.

[5] Baronius omitted this exhibit from its Second Amended Complaint, but did attach it to the Original and First Amended Complaints. To the extent this exhibit is not considered part of the pleadings because Baronius excluded it from the Second Amended Complaint, the Court may take judicial notice of this document because it is generally known within the Court territorial jurisdiction (it was publicly filed, twice) and it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned (Baronius itself attached the document and alleged its authenticity).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**Faithlife published** (B. Herder Book Company, 1957, Second Edition) is known to have several historical, theological, doctrinal and substantial grammatical errors." *Id.*

In sum, Faithlife published the original *Fundamentals* translation from the 1950s (specifically the Second Edition from March 1957). There are no allegations that Faithlife published the revised and new 2018 English translation of *Grundriss* from Baronius (nor could there be, because Faithlife did not publish it).

   3.  *Baronius cannot state a claim because it does not allege that Faithlife infringed the right it allegedly possesses.*

Baronius has no standing for a copyright infringement claim based on its exclusive rights granted by Nova to an English translation of *Fundamentals* because that right was limited to creating a new translation that Faithlife did not publish. "[O]nly 'the legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of Section 411, to institute an action for an infringement ***of that particular right*** committed while he or she is the owner of it.'" *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015) (citing 17 U.S.C. § 501(b)) (emphasis added). When a copyright owner transfers some exclusive rights, but not all, the copyright owner "will still have standing to sue as the legal owner of the rights that were not transferred" but "no longer has standing to sue for the rights that have been transferred." *Fathers & Daughters Nevada, LLC v. Lingfu Zhang*, 284 F. Supp. 3d 1160, 1167–68 (D. Or. 2018). In the same vein, the transferee only has standing as to infringements against exclusive rights that have been granted to it. *See Minden Pictures*, 795 F.3d at 1003 (9th Cir. 2015) ("Thus a party granted an exclusive license to display a work may bring an infringement action challenging the unauthorized display of that work by another party, even though the licensee does not hold legal title to the work."); *see also Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("[I]n order for a plaintiff to be 'entitled . . . to institute an action' for

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

infringement, the infringement must be 'committed while he or she is the owner of' *the particular exclusive right allegedly infringed*.") (emphasis added).

As the Ninth Circuit has explained:

> In other words, exclusive rights may be chopped up and owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small. For instance, A may own the copyright in a book, while B may own the right to develop the book into a screenplay. A may sue an infringer of the book; B may sue an infringer of the screenplay. But only owners of an exclusive right in a copyright may sue.

*Silvers*, 402 F.3d at 887.

Baronius alleges that it has an exclusive right to distribute and publish a new English translation of *Grundriss*, which had to be specifically approved by the rightholder before publication. That "fully revised and updated" edition was published in 2018. The limited nature of Baronius's alleged exclusive right is confirmed by the contracts attached to the SAC showing that the copyright holder granted a limited exclusive right to create a new English translation and expressly forbade any rights to distribute or publish the existing *Fundamentals* translation from the 1950s. Baronius does not allege that Faithlife infringed that exclusive right. Instead, Baronius alleges that Faithlife published the original *Fundamentals* translation by Patrick Lynch from the 1950s (specifically Second Edition March 1957). Baronius has not alleged that it possesses (and indeed does not possess) an exclusive right to this work through its 2009 contract with Nova. As to Count 1, Baronius relies exclusively on its exclusive rights to "*Grundriss English Edition*" granted under its 2009 contract with Nova. Because Baronius's allegations fail to plausibly allege that Baronius has standing to assert a copyright infringement claim as to rights it does not possess, Count I must be dismissed for failure to state a claim.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**C.** ***Fundamentals*: Baronius has not plausibly alleged ownership of the copyright or any exclusive right (Count 2).**

Baronius has failed to plausibly plead ownership of the *Fundamentals* copyright, or any exclusive right, for at least two reasons. First, by statute, the U.S. copyright to *Fundamentals* was automatically restored and vested in the author. Baronius has conceded that Patrick Lynch was the author of *Fundamentals*—indeed, Baronius listed Patrick Lynch as the author on its copyright registration. Because Baronius has not alleged, or attached as an exhibit, any written assignment of rights from Patrick Lynch, Baronius has failed to plausibly state a claim. Second, even if the restored U.S. copyright could have vested in someone other than the author, setting aside the clear statutory language, Baronius has failed to allege facts that could establish that the initial copyright vested in Mercier Press, as opposed to the author, Patrick Lynch. Baronius's claim thus fails for the same ultimate reason: there is no written assignment from Patrick Lynch of any rights.

1.  *Baronius bears the burden of pleading plausible facts that establish ownership of the copyright to Fundamentals.*

A copyright infringement plaintiff "bears the burden of proving copyright ownership." *Choyce v. SF Bay Area Ind. Media Ctr.*, 2014 WL 5597274, at *1 (N.D. Cal. Nov. 3, 2014) (quoting *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011)). This is because "ownership of a valid copyright" is necessary "to state a claim for copyright infringement." *Hyowon Elecs., Inc. v. Eron, Inc.*, 2014 WL 12560693, at *3 (C.D. Cal. May 15, 2014). "Ownership of the copyright is therefore always a threshold question." *Id.* (quoting *Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir. 1983)).

"Ordinarily, a certificate of registration raises the presumption of copyright validity and ownership." *Hyowon Elecs., Inc. v. Erom, Inc.*, 2014 WL 12560693, at *3 (N.D. Cal. May 15, 2014) (quoting *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 987 n.2 (9th Cir. 2009) (cleaned up)). But that presumption only applies where the registration is "made before

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

or within five years after first publication of the work." 17 U.S.C. § 410(c); *see also Art of Living Foundation v. Does 1-10*, 2012 WL 1565281, at *8 (N.D. Cal. May 1, 2012) ("Because the registration was obtained more than five years after the [Work's] first publication, the registration certificate, on its own, does not constitute prima facie evidence of valid copyright ownership."). Thus, where no presumption applies, a plaintiff must sufficiently allege copyright ownership either through plausible factual allegations or verifiable, judicially noticeable documents. *Hyowon Elecs.*, 2014 WL 12560693, at *3. Here, Baronius has failed to do so. Indeed, Baronius's allegations and the documents attached to the complaint instead establish that Baronius is *not* the owner of the U.S. copyright to *Fundamentals*.

> **2.** **The U.S. copyright to Fundamentals vested automatically in the author, who has not granted any rights to Baronius.**

*Fundamentals* is a restored work. Baronius admits that in its Second Amended Complaint, alleging that "*Fundamentals* was not published in the U.S. during the 30-day period following its first publication in Ireland, but was in the public domain in the U.S. from 1955 (because it did not comply with formalities imposed at any time by U.S. law)" and that "[t]he copyright to *Fundamentals* was restored on January 1, 1996 under the URAA." SAC ¶ 39. Baronius alleges that the U.S. copyright was restored "to its initial copyright holder Mercier Press" but, under the plain language of the statute, this is incorrect. *Id.*

Under the URAA, the U.S. copyright in a restored work "vests initially in the author or initial rightholder of the work as determined by the law of the source country of the work." 17 U.S.C. § 104A(b). The URAA thus establishes two categories of foreign copyright owners whose U.S. copyrights can be restored: (1) authors, and (2) initial rightholders. But here, "initial rightholder" is not applicable—the URAA expressly limits "initial rightholders" only to owners of a copyright in a "sound recording," e.g. music composers. 17 U.S.C. § 104A(h)(7). Because *Fundamentals* is not a sound recording, the U.S. copyright to *Fundamentals* vested in the "author."

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Baronious alleges, and it is true, that Dr. Patrick Lynch is the "author" of *Fundamentals*. *See* SAC ¶ 25, Table 1 (listing "Dr. Patrick Lynch" as the "Author" of "*Fundamentals* of Catholic Dogma").[6] Baronius also listed Dr. Patrick Lynch as the "author" of *Fundamentals* in its copyright registration of *Fundamentals* that it filed in 2014. *See* SAC Exh. 3, Dkt. # 48-4 at p. 9. Instead, Baronius alleges only that "Mercier Press paid a fee of 259.10 Irish pounds to the Translator and became an initial copyright holder of *Fundamentals*." SAC ¶ 36. But, except as to sound recordings, the URAA permits U.S. copyrights to be restored only to an "author." Because Baronius alleges that Dr. Patrick Lynch is the "author," Baronius has not plausibly alleged that the U.S. copyright was restored to anyone other than Dr. Patrick Lynch.

> 3. *Under Irish law, Mercier Press was not the first copyright holder (or author) of* Fundamentals.

Faithlife understands that the parties agree that the operative law in Ireland in 1953 through 1955 (when *Fundamentals* was authored and published) pertaining to copyrights was the Industrial and Commercial Property (Protection) Act of 1927.[7] Section 158(1) provides that "the author of a work shall be the first owner of the copyright therein" with only two exceptions. Indus. And Com. Prop. (Protection) Act 1927 (Act No. 16/1927) (Ir.), https://www.irishstatutebook.ie/eli/1927/act/16/section/158/enacted/en/html#. First, "where, in the case of an engraving, photograph, or portrait, the plate or other original was ordered by some other person and was made for valuable consideration in pursuance of that order, then, in the absence of any agreement to the contrary, the person by whom such plate or other original was ordered shall be the first owner of the copyright." *Id*. at § 158(1)(a). Second,

---

[6] The Original and First Amended Complaint contained further allegations that "*Fundamentals of Catholic Dogma* ('*Fundamentals*') was authored by Dr. Patrick Lynch . . ." but these allegations were omitted from the Second Amended Complaint. *Compare* Compl. ¶ 26 *and* FAC ¶ 26, *with* SAC ¶ 36.

[7] A copy of this statute, provided by the Office of the Attorney General of Ireland, can be found at https://www.irishstatutebook.ie/1927/act/16/enacted/en/print#sec158 and a copy is attached as Exhibit 1. Faithlife requests judicial notice be taken of this statute pursuant to Fed. R. Evid. 201.

DEFENDANT'S MOTION TO DISMISS - 14
Case No. 2:22-CV-01635-TL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

"where the author was in the employment of some other person under a contract of service or apprenticeship and the work was made in the course of his employment by that person, the person by whom the author was employed shall, in the absence of any agreement to the contrary, be the first owner of the copyright . . . ." *Id.* at §158(1)(b).[8]

As an initial matter, these exceptions are irrelevant to determining in whom the U.S. copyright to *Fundamentals* vested when it was restored. This is because neither exception changes who is the "author." Instead, the statute expressly distinguishes between the "author" and the "first owner of the copyright." Even if Mercier Press qualified as the first owner of the copyright, it still is not the "author" under Irish law, and therefore the U.S. copyright to *Fundamentals* could not have vested in Mercier Press.

But here, Baronius's factual allegations also establish that the two exceptions under Irish law do not apply, and Dr. Patrick Lynch was the first owner of the copyright, not Mercier Press. The first exception is plainly inapplicable—*Fundamentals* is not "an engraving, photograph, or portrait" and Baronius has not alleged it is. And the second exception also does not apply. The complaint does not contain any allegations that Dr. Patrick Lynch was "in the employment" of Mercier Press or that "the work was made in the course of his employment." Instead, the complaint alleges that Mercier Press "became an initial copyright holder of *Fundamentals*" because *Fundamentals* "was commissioned by Mercier Press, Ireland as work for hire to Dr. Patrick Lynch" and "Mercier Press paid a fee of 259.10 Irish pounds to [Dr. Patrick Lynch]."[9] The only evidence attached to the complaint is consistent with this description—that Dr. Patrick Lynch was not an employee or apprentice,

---

[8] This remains the law in Ireland today. *See* Copyright and Related Rights Act, 2000 at Section 23 (Act. No. 28/2000), https://www.irishstatutebook.ie/eli/2000/act/28/enacted/en/html# ("The author of a work shall be the first owner of the copyright unless (a) the work is made by an employee in the course of employment, in which case the employer is the first owner of any copyright in the work, subject to any agreement to the contrary ... ").
[9] Although Baronius references "work for hire," that phrase does not appear in the operable Irish statute. To the extent this references "work made for hire" under U.S. copyright law, that is irrelevant here because the law of the source country, Ireland, applies. 17 U.S.C. § 104A(b).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

but rather an independent person to whom Mercier Press paid discrete translation fees for specific works. *See* SAC Exh. 3; Dkt # 48-4 at pp. 6–7 (ledger showing sporadic payments to Dr. Patrick Lynch for specific translations).

Because Dr. Patrick Lynch was not an employee or apprentice, and the work was not created during the course of that employment (and *Fundamentals* is not an engraving, photograph, or portrait), Dr. Patrick Lynch, "the author of [the] work," was "the first owner of the copyright therein" under Irish law in the 1950s. Thus, even if the U.S. copyright could have been restored to someone other than the "author" (or even if the "first owner of the copyright" under Sections 158(1)(a) or (b) qualified as the "author" under Irish law), Baronius's allegations show that Dr. Patrick Lynch, not Mercier Press, was the first owner of the copyright under Irish law.

> *4. Baronius has not plausibly alleged that Dr. Patrick Lynch assigned his U.S. copyright to Mercier Press, Baronius, or anyone else.*

Whether looking at the "author" or "first owner of the copyright," Baronius's allegations plausibly establish that the restored U.S. copyright to *Fundamentals* vested in Dr. Patrick Lynch. Under both U.S. and Irish law—in the 1950s and today—a copyright may only be assigned by written agreement. *See* Indus. And Com. Prop. (Protection) Act 1927 at Section 158(2) (Act No. 16/1927) (Ir.), https://www.irishstatutebook.ie/eli/1927/act/16/section/158/enacted/en/html# ("The owner of the copyright in any work may assign the right . . . but no such assignment or grant shall be valid unless it is **in writing** signed by the owner of the right in respect of which the assignment or grant is made"); Copyright and Related Rights Act, 2000 at Section 120(3) (Act No. 28/2000), https://www.irishstatutebook.ie/eli/2000/act/28/enacted/en/html ("An assignment of the copyright in a work, whether in whole or in part, is not effective unless it is **in writing** and signed by or on behalf of the assignor"); 17 U.S.C. § 28 (1909 Act) ("Copyright secured under this title or previous copyright laws of the United States may be

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

assigned, granted, or mortgaged by an instrument **in writing** signed by the proprietor of the copyright, or may be bequeathed by will."); 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is **in writing** and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

There are no allegations in the Second Amended Complaint, and no documents attached exhibiting, that Dr. Patrick Lynch assigned any of his exclusive rights to the U.S. (or other) copyright in *Fundamentals* in writing. Instead, the chain of title alleged in the Second Amended Complaint stops at Mercier Press. *See* SAC Exh. 3; Dkt. #48-4. Count 2 therefore should be dismissed for failure to state a claim because Baronius has not plausibly alleged ownership of the copyright of which it alleges infringement. *See, e.g.*, *Fleischer Studios, Inc.*, 654 F.3d at 962 (9th Cir. 2011).

### D. Counts 3 and 4: Baronius fails to state a claim for violation of the Digital Millennium Copyright Act.

*1.* *Baronius has not plausibly alleged ownership or exclusive right to Grundriss or Fundamentals and therefore has no injury or standing.*

The DMCA provides a private right of action to "[a]ny person injured by a violation of section 1201 or 1202." 17 U.S.C. § 1203(a). Baronius's only alleged injuries stem from Baronius's alleged ownership or other interest in *Grundriss* or *Fundamentals.* SAC ¶ 128, 145. As detailed above, *see supra* Sections III.A–C, Baronius has not plausibly alleged that it owns the copyright to, or holds any exclusive right in, *Grundriss* or *Fundamentals*, does not have standing for its copyright infringement claims, and those claims should be dismissed for failure to state a claim.

Where a plaintiff fails to show an ownership interest in the underlying copyright, and the alleged injury derives from that copyright, there is no standing for a DMCA claim. *See, e.g.*, *Shah v. NYP Holdings, Inc.*, 2023 WL 266511, at *4 (N.D. Ill. Jan. 18, 2023) ("Absent

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

an ownership interest in the images, it is unclear how [plaintiff] faced any injury as a result of the allegedly improper attribution of these photographs to IMDb or Facebook."); *Pisciotti v. Brittingham*, 2022 WL 2392198, at *14 n.25 (W.D. Wa. July 1, 2022) ("Finally, [plaintiff] must establish that he owns the copyright in the Work to prove that he was injured by [defendant's] alleged section 1202 violations. *See* 17 U.S.C. § 1203(a). The Court does not mean to suggest that only copyright owners have standing to bring DMCA claims. . . . But [plaintiff]'s complaint makes clear that, at least in this case, whether he was injured turns on confirmation of his ownership."). Here, Counts 3 and 4 are clear that Baronius's alleged injuries turn on its ownership of the copyrights, or exclusive rights therein. *See* SAC ¶¶ 117–119, 134–136 (re-alleging Baronius's ownership interests in the copyrights); ¶¶ 128, 145 (describing Baronius's "actual damages" as "arising from reputation damage, legal fees, diminished market value of [the allegedly infringed work], and loss of control of ownership of [the allegedly infringed work]."). If Counts 1 and 2 are dismissed, Counts 3 and 4 also should be dismissed for lack of standing.

2.     *Baronius fails to plausibly allege Faithlife knowingly provided false CMI and did so with intent to induce, enable, facilitate, or conceal an infringement.*

Baronius also fails to state a claim for violation of Section 1202(a) of the DMCA because it has not plausibly alleged facts that satisfy the intent requirements.[10] Section 1202(a) states that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). Thus, § 1202(a) requires that the plaintiff "plausibly allege that the defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *LIVN Worldwide Ltd. v.*

---

[10] While the Second Amended Complaint does not specify between Sections 1202(a) and (b), there are no allegations that Baronius altered or removed copyright management information. Therefore Section 1202(b) is inapplicable here.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Vubiquity Inc.*, 2022 WL 18278580, at *5 (C.D. Cal. July 22, 2022) (emphasis in original) (quoting *Krechmer v. Tantaros*, 747 Fed. App'x. 6, 9 (2d Cir. 2018)). "At the pleading stage, the claimant must plead facts plausibly showing that the alleged infringer had this required mental state." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. June 18, 2019).

Baronius fails to plausibly allege such intent because the allegations merely recite the elements of intent required under § 1202(a) of the DMCA—and those allegations are directly contradicted by both factual allegations and the documents attached to the complaint.[11] *Morgan v. Associated Press*, 2016 WL 6953433, at *3 (granting defendant's motion to dismiss a § 1202(a) claim and holding that "a formulaic recitation of the elements of a cause of action, including allegations regarding a defendant's state of mind, are not sufficient to satisfy Rule 8."); *see also Mills v. Netflix, Inc.*, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020) (same and collecting cases in accord).

All of Plaintiff's allegations as to intent with respect to CMI are set out below:

- ¶ 4: "Upon information and belief, Defendant knowingly, and with an intent to induce, enable, facilitate, or conceal its infringement, knowingly provided false [CMI] in at least seventy-five copies of *Fundamentals* for which Plaintiff holds copyright rights, displaying false CMI in at least seventy-five copies of *Fundamentals* that it reproduced and distributed."

---

[11] Baronius also fails to plausibly allege knowledge, but for purposes of this motion, Faithlife has focused on the clear absence of plausible allegations of intent to induce, enable, facilitate, or conceal an infringement. While Baronius alleges that Faithlife had knowledge through its prior 2013 publication of *Fundamentals*, Baronius also attaches to the complaint Faithlife's repeated explanation that the 2013 employees had left the company by 2019 and the new employees made the same mistake in 2019 in researching the copyrights and mistakenly believed *Fundamentals* to be in the public domain. Baronius has not contested these explanations, or made contrary factual allegations other than boilerplate statements of knowledge, and therefore cannot plausibly allege knowledge either.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

- ¶ 74: "Defendant provided Fundamentals with false CMI intentionally and purposefully."

- ¶¶ 97, 110: "Defendant attempted to conceal its aforementioned acts of copyright infringement by providing [*Grundriss English Edition / Fundamentals*] with false CMI, by publishing statements that it is negotiating with the copyright holder to obtain a permission to reproduce and distribute [*Grundriss English Edition / Fundamentals*], and other acts of concealment as alleged in this Complaint, as well as other acts of concealment not currently known by Plaintiff."

- ¶¶ 76, 124, 141: "Defendant purposefully concealed its acts of willful copyright infringement from the public on its online Forums by using the term "new copyrightholder" instead of clearly stating that Plaintiff was the copyright holder of *Grundriss English Edition* [and *Fundamentals*]."

- ¶¶ 126, 143: "The conduct of Defendant was intentional and purposeful at a minimum as Defendant had constructive and actual knowledge of the true copyright holder of *Grundriss English Edition* [and *Fundamentals*]."

Every allegation above is conclusory and implausible. Baronius alleges Faithlife acted with intent because "Defendant had actual or constructive knowledge of the true copyright holder." But alleging knowledge does not plausibly allege intent. If knowledge was all that was required to show that a defendant acted "intentionally" under the DMCA, the statute would not require both knowledge and intent. There are no allegations at all as to Faithlife's mental state or any specific factual allegations supporting the plausibility that Faithlife intended to induce, enable, facilitate, or conceal infringement—the only allegation that comes close relates to a statement Faithlife made *after* removing *Fundamentals* from publication (and thus does not show intent in the initial CMI publication). For this reason alone, the Court should grant Faithlife's motion to dismiss Plaintiff's DMCA claim. *See Morgan*, 2016 WL 6953433, at *3.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

But these allegations are especially implausible because they are directly contradicted by Baronius's own factual allegations. Specifically, Baronius alleges that:

- Faithlife published *Fundamentals* for two months—from April 25, 2019 to June 26, 2019. SAC ¶¶ 49, 51, 55.[12]

- Faithlife voluntarily stopped publishing *Fundamentals* on its own six months before Baronius contacted Faithlife. SAC ¶ 55.

- On April 24, 2019—the same day *Fundamentals* first was published—Faithlife stated in a public forum that "Verbum still doesn't have rights to produce this, but we are going to revisit the rights situation with both the German publisher (Herder) and a newer U.S. publisher (Baronius) to see if we can get this licensed." SAC ¶ 55.

- When Faithlife ceased publishing *Fundamentals*, it posted on a public forum that it had learned the CMI was incorrect. *Id*. Specifically, Faithlife publicly stated it had "learned more recently—and definitively—that the book has a new copyright holder" which was why "we had to take the book down (again)." *Id*. Faithlife also stated that it was attempting to work with that new copyright holder (Baronius) to license the book—in other words, affirmatively correcting the copyright information and publicly stating that Baronius was the correct copyright holder. *Id*.

- The allegedly "false CMI" is simply the copyright information from the version of the book that Faithlife scanned—the Second Edition from 1957. SAC Exh. 9, Dkt # 48-10; FAC Exhs. 7 and 8, Dkt. # 13-8, 13-9.

These factual allegations simply are not consistent with an intent to induce, enable, facilitate, or conceal infringement, and indeed render such allegations implausible. A party that intended to induce, enable, facilitate, or conceal infringement would not voluntarily cease

---

[12] Note that paragraph 49 incorrectly states March—this appears to be a typo as the screenshot in the same paragraph shows April 24th, and the remaining factual allegations in the SAC state April.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

its publication, publicize its own investigation into the copyright, and publicly correct the copyright information. The allegations and exhibits also show that Faithlife simply provided the CMI from the 1957 book version it scanned—hardly a nefarious scheme to induce, enable, facilitate, or conceal infringement. Instead, Baronius's allegations indicate that Faithlife was acting innocently and transparently. *See Stevens v. Corelogic, Inc.*, 899 F.3d 648, 671 (9th Cir. 2018) (citing legislative history to show that "Section 1202's provisions 'do not apply to those who act innocently . . .'") (ellipsis in original).

Baronius also attached exhibits to the SAC showing that Faithlife's publication of *Fundamentals* was accidental and without intent—directly contradicting Baronius's barebones allegations of intent. Specifically:

- Faithlife's then-CEO explained to Baronius that Faithlife's employees had "consult[ed] a copyright renewal database and ma[d]e a possible-incorrect determination, based on not finding the book in the renewal database, and our lay-interpretation of the copyright laws." SAC Exh. 7; Dkt. # 48-8 at p. 9. The employees had "made a good faith effort to determine the copyright status and ensure the title was in the public domain, using what they thought was a complete and correct process." *Id*.

- The employees who made the previous mistake in 2013 had left the company and "different team members (not employed with [Faithlife] in 2013) consulted the copyright databases again, and not knowing the history on this title, made the same interpretation as the first time." *Id*. ("The issue at hand was this second mistake, made by a different employee. It was unintentional, was remedied as soon as brought to our attention, and resulted in $388 in revenue, and a list-price loss to you of under $5,000. We followed up with an offer to give you all this revenue and more.").[13]

---

[13] Baronius actually included factual allegations confirming this fact, specifically alleging that Craig St. Clair, the Verbum Product Manager responsible for the publication of *Fundamentals* in 2019, was employed "between September 2017 and March 2020." SAC ¶ 21.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

- When initially contacted by Baronius, Faithlife offered its "deepest apologies" and stated that "[t]he posting of the title was inadvertent and it was taken down from our website and made unavailable for sale when the error was realized." SAC Exh. 6.

- Faithlife generated a whopping $388 in revenue from 75 total copies distributed of *Fundamentals* during the two months it was made available. SAC Exh. 6 and 7.

These statements obviously come directly from Faithlife. But this case is unusual because these statements are (1) attached to the complaint; and (2) uncontested by any non-conclusory factual allegations by Baronius. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (The Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint."). Aside from its generic recitations of the intent elements, Baronius has not alleged facts that Faithlife's explanations are untrue. As such, Baronius's boilerplate allegations are not plausible. This claim for violation of § 1202(a) should be dismissed.

### E.     All claims should be dismissed with prejudice.

Baronius has had three bites at the apple and has failed to plausibly state a claim as to any of the four claims. Baronius also declined to amend for a fourth time and already has had the opportunity to amend after Faithlife raised that Baronius has not plausibly alleged copyright ownership or intent under the DMCA. Faithlife understands that Baronius has attached all of the evidence it possesses regarding copyright ownership—there are no further factual allegations Baronius could make to establish ownership of either the *Fundamentals* copyright or an exclusive right to *Grundriss* that is allegedly infringed. Further amendment therefore would be futile and the claims should be dismissed with prejudice. *Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019); *see also Chaves v. Amazon.com Servs. LLC*, 2022 WL 1908827, at *2 (W.D. Wash. May 23, 2022), report and recommendation adopted, 2023 WL 3301994 (W.D. Wash. May 8, 2023) (further amendment was futile because the complaint had already been amended twice).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## IV. CONCLUSION

Based on the foregoing, Faithlife respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint and all claims therein pursuant to Fed. R. Civ. P. 12(b)(6) for failure state a claim upon which relief can be granted.

DATED this 24th day of May, 2023.

K&L Gates LLP

By _s/ Nicholas F. Lenning_
   Nicholas F. Lenning, WSBA #54740
   Ashley E.M. Gammell, WSBA #50123
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 623-7580
Fax: (206) 623-7022
Email:   nicholas.lenning@klgates.com
         ashley.gammell@klgates.com

Attorneys for Defendant
Faithlife Corporation

I certify that this motion contains 7,783 words, in compliance with LCR 7(e)(3).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**Conferral under this Court's Standing Order**

Defendant Faithlife has had an opportunity to meet and confer with Plaintiff Baronius concerning this motion to dismiss. Specifically, Faithlife provided the basis for its motion by email and the parties then met and conferred by telephone conference on April 19th. The parties exchanged numerous emails with their positions, and Baronius confirmed by email on May 4th and May 9th that it would not be further amending the complaint to address Faithlife's arguments.

_s/ Nicholas F. Lenning_
Nicholas F. Lenning, WSBA #54740

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# EXHIBIT 1

Home > Acts > 1927 > Industrial and Commercial Property (Protection) Act, 1927

# Industrial and Commercial Property (Protection) Act, 1927

Ownership of copyright, etc.

**158.**—(1) Subject to the provisions of this Act, the author of a work shall be the first owner of the copyright therein:

Provided that—

(*a*) where, in the case of an engraving, photograph, or portrait, the plate or other original was ordered by some other person and was made for valuable consideration in pursuance of that order, then, in the absence of any agreement to the contrary, the person by whom such plate or other original was ordered shall be the first owner of the copyright; and

(*b*) where the author was in the employment of some other person under a contract of service or apprenticeship and the work was made in the course of his employment by that person, the person by whom the author was employed shall, in the absence of any agreement to the contrary, be the first owner of the copyright, but where the work is an article or other contribution to a newspaper, magazine, or similar periodical, there shall, in the absence of any agreement to the contrary, be deemed to be reserved to the author a right to restrain the publication of the work, otherwise than as part of a newspaper, magazine, or similar periodical.

(2) The owner of the copyright in any work may assign the right, either wholly or partially, and either generally or subject to limitation as to place or otherwise and either for the whole term of the copyright or for any part thereof, and may grant any interest in the right by licence, but no such assignment or grant shall be valid unless it is in writing signed by the owner of the right in respect of which the assignment or grant is made, or by his duly authorised agent:



Provided that, where the author of a work is the first owner of the copyright therein, no assignment of the copyright, and no grant of any interest therein, made by him (otherwise than by will) after the passing of this Act, shall be operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of twenty-five years from the death of the author, and the reversionary interest in the copyright expectant on the termination of the period shall, on the death of the author, notwithstanding any agreement to the contrary, devolve on his legal personal representatives as part of his estate, and any agreement entered in to by him as to the disposition of such reversionary interest shall be null and void, but nothing in this proviso shall be construed as applying to the assignment of the copyright in a collective work or a licence to publish a work or part of a work as part of a collective work.

(3) Where, under any partial assignment of copyright, the assignee becomes entitled to any right comprised in copyright, the assignee as respects the right so assigned, and the assignor as respects the rights not assigned, shall be treated for the purposes of this Act as the owner of the copyright, and the provisions of this Act shall have effect accordingly.

