**HONORABLE TANA LIN**

**NOTE DATE: JUNE 16, 2023**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARONIUS PRESS, LTD., an Isle of Man limited company,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>FAITHLIFE, LLC, a Delaware limited liability company,<br><br>　　　　　　　　　Defendants. | NO. 2:22-cv-01635-TL<br><br>DECLARATION OF<br>PAVEL KEJIK<br>IN SUPPORT OF PLAINTIFF'S<br>OPPOSITION TO DEFENDANT'S RULE<br>12(B)(6) MOTION TO DISMISS |

I, Pavel Kejik, hereby swear under the penalty of perjury that the following is true and correct to the best of my personal knowledge:

1. I am the Director of Plaintiff Baronius Press, Ltd.

2. I submit this declaration in support of Plaintiff's Opposition to Defendant Faithlife, LLC ("**Defendant**") Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

3. Plaintiffs Second Amended Verification Complaint (Dkt No. 48) ("**SAVC**") has plausibly alleged claims for copyright infringement under 17 U.S.C. § 501 is based on

DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 1

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

Defendant's unlawful expropriation of Plaintiff's registered literary works *Fundamentals of Catholic Dogma* ("**Fundamentals**") and *Grundriss der katholischen Dogmatik* ("**Grundriss**"); and claims for violations of 17 U.S.C. § 1202(a) for providing and distributing at least 75 copies of *Fundamentals* with false Copyright Management Information ("**CMI**").

4.   In response to the SAVC, Defendant filed its Rule 12(b)(6) Motion to Dismiss (Dkt. No. 55) ("**Motion**").

5.   I have reviewed the SAVC and Defendant's Motion, and have personal knowledge that many of the statements alleged in the Motion are false, deceptive or spun so one-sided that these statements actually changed the meaning of the facts, events and even the application of the correct laws.

6.   I will address many of these false, deceptive and/or one-sided spins in chronological order, as Defendant has alleged in its Motion so that Defendant's statement will appear first, and my response to such false, deceptive and/or one-sided spins will be presented next in COLOR font, as follows:

7.   Just as with its previous Motion to Dismiss (Dkt. No 41) Faithlife starts its latest Motion claiming that "*This case is about innocent, very limited distribution of one work*" (Motion, Pg. 1). "Innocent intent is generally not a defense to copyright infringement, 3 Nimmer on Copyright § 13.08 (1981)" *See Williams Electronics, Inc. v. Artic International, Inc.*, 685 F.2d 870, 878 (3d Cir.1982). [1]

8.   Faithlife argues that "*Faithlife's publication of Fundamentals was accidental and without intent*" (Motion, Pg. 5). Such excuse could possibly be acceptable for the initial release

---

[1] http://digital-law-online.info/cases/215PQ405.htm

| DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 2 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>701 5th Avenue, Suite 2100<br>Seattle, WA  98104<br>Telephone: (206) 695-5100<br>Facsimile: (206) 689-2822 |
|---|---|

of *Fundamentals* i.e. "*Sorry to be the bearer of bad news, but this was inadvertently turned to live as part of another Logos project. Verbum still doesn't have the rights to product this, but we are going to revisit the rights situation with both the German publisher (Herder) and a newer U.S. publisher (Baronius) to see if we can get this licensed.*" (SAVC ¶50) but the subsequent release with Faithlife's public statement "*Upon further review and discussion on the product team, this text [Fundamentals] can be made available for sale. Whenever there is a doubt about the rights of a given title, we will always pull it from Verbum.com [i.e., Defendant's website] until we can get clarity. I'm just happy to report that we got clarity on this title MUCH more quickly than we usually do.*" (SAVC ¶51) shows that the release was not accidental or innocent.

9. Faithlife further argues that its new employees are responsible for the acts alleged by Baronius in its Second Amended Verified Complaint ("SAVC") and that the repeated breach of the copyright law was accidental and without intent because "*new Faithlife employees, not employed from 2013 to 2015, consulted a copyright renewal database rather than a copyright registration database under the mistaken belief...*" (Motion, Pg. 5). Nowhere in its Motion does Faithlife cite any authority that a limited liability company is not liable for the acts of its former or current employees because it cannot do so. The company's CEO Mr. Pritchett had "authority and control over all personnel of the Corporation" (42 U.S. Code § 12651d). He signed the settlement agreement for the first infringement in 2013 and clearly was fully aware of the true copyright holders of *Fundamentals* and *Grundriss*.

DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 3

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

10. After the second infringement, CEO Mr. Pritchett stated in his correspondence: "*It's also very reasonable for us to make this mistake*". In his own book *Fire Someone Today*[2] published in 2006 Mr. Pritchett states:

> **Know the Law**
> Understanding and complying with employment law is essential for everyone involved in hiring for your business. Don't let anyone conduct an interview without training in what is and is not appropriate to ask or say. As the final interviewer and hire/no-hire decision maker, you need to be especially sensitive to your own weak spots. Have your attorney explain potential trouble areas for your type of business. Be on guard for any personal prejudice that could get you into legal trouble or even just deny you a great candidate. (It is not illegal to discriminate against redheads or opera fans, but it would be a waste to do so.)

11. Mr. Pritchett encourages the readers of his book to get familiar with the law and even get an attorney to explain "potential trouble areas for your type of business", yet for Faithlife's core business activity *i.e.* publishing which involves copyright, he states that "*We don't have an intellectual property attorney and have never made it a practice to consult one.*" (SAVC, Exh. 7, Pg. 3).

12. In the same book, *Fire Someone Today* Mr. Pritchett further states that:

> Ultimately, we switched to a wiki. A wiki is a special Web site that can be hosted inside or outside your organization and which can be edited by anyone who can see it. It is very simple; it involves no fancy procedures. Every page has an edit button, and after clicking it, anyone can easily revise the text on the page. A record is kept of every change, and anyone can step backward to see earlier versions of the page.
>
> The wiki makes it easy to document a process, and that reduced friction makes it easier to develop good systems and keep them up-to-date. Every system is available to everyone and is easily revised whenever necessary. We store in the wiki everything from how to process an order to the company phone list to the schedule for our chili cook-off. The wiki itself has become a good system: "put it on the wiki" is the system that ensures that company knowledge is recorded in a place everyone can access.

---

[2] https://www.amazon.com/Fire-Someone-Today-Surprising-Business/dp/0785212620.

DECLARATION OF PAVEL KEJIK IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S RULE
12(B)(6) MOTION TO DISMISS - 4

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

13. Despite "*storing everything in [Faithlife's] wiki*" at least from 2006[3], Mr. Pritchett "*... have made sure multiple team members and our management team are very aware of this situation ["knowing the history of this title"] and taken steps to ensure it will never happen again.*" (SAVC, Exh. 7, Pg. 9) only after the second infringement which shows a clear failure of his duties as CEO.

14. Furthermore, the Faithlife employees who "*under the mistaken belief that the initial 28-year protection under the 1909 Copyright Act for a work published in the 1950s would have lapsed long ago*" (Motion, Pg. 5) did not provide *Fundamentals* with CMI stating "Copyright – Public Domain" as Faithlife does with other public domain titles in its portfolio and instead knowingly provided a false CMI "Copyright 1957 B. Herder Book Company" (Dkt. No. 48.10) clearly acted with knowing intent.

15. With such argumentation, not only does Faithlife justifies the willful act of infringement but also implies that it is acceptable to repeatedly infringe *i.e.* break the law if new employees are involved. Faithlife seems to have a habit of blaming its employees for its failure to comply with the law, the most recent being the "*mix-up in its mailroom*" (Dkt. 37, Pg. 4) when Faithlife failed to answer the First Amended Verified Complaint (Dkt. No 22) after receiving an email from its registered agent with "SOP [Service of Process] Papers with Transmittal notice. (Dkt. No. 32.1).

16. Faithlife further claims that Plaintiff in its SAVC alleges that it "*voluntarily pulled it six months before being contacted by Baronius*" (Motion, Pg. 1) whereas Faithlife removed the work from distribution because it learned of its "*new copyright holder*" (SAVC ¶55).

---

[3] *Fire Someone Today* was first published in 2006.

| | |
|---|---|
| DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 5 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>701 5th Avenue, Suite 2100<br>Seattle, WA 98104<br>Telephone: (206) 695-5100<br>Facsimile: (206) 689-2822 |

1  Faithlife actually never contacted the "*new copyright holder*" (SAVC ¶55) to inform them of its
2  act and to try to remedy the situation.

3       17.   In fact, Faithlife never removed the false statements from its Online Forums
4  despite Faithlife's CEO's own words: "*We want to make this right.*" (SAVC, Exh. 7, Pg. 9) and
5  to date has not attempted to remove the false CMI[4] from the digitally distributed copies of
6  *Fundamentals* therefore forcing Baronius to file its Complaint "*days before the expiration of the*
7  *statute of limitations*" (Motion, Pg.1).

8       18.   In its Motion, Faithlife states that its publishing of Fundamentals "*resulted in $388*
9  *in revenue*" (Motion, Pg. 22), yet, does not mention that it used the false posts about Baronius'
10 titles (*Fundamentals, Know Bible, Divine Intimacy*) to attract interest in its newly launched
11 Verbum line which Mr Craig St Clair managed to "*grow from $1.7M to $2.2M annually*".
12 (SAVC, Exh. 1, Pg. 3;). This is in line with the statements Mr. Pritchett makes in his book *Fire*
13 *Someone Today:*

> Press can be good for more than just an ego boost. Press serves as free advertising, which is a valuable thing: any story about your business that is not explicitly negative acts as an advertisement. Coverage in the news or editorial section gets more attention and has more weight with readers than anything you could put in a paid advertising.
>
> \* \* \* \* \*
>
> **Put Profit First**
> Profit is the first mission of every business. It protects and enables all the others. Goals may inspire your business, and cash may keep it alive, but if your business is not pursuing a profit, it is not a business; it is a hobby. Or a money pit. Or a massive black hole that will absorb your time, effort, hopes, dreams, and financial future. Take your pick.

---

[4] Unlike physical copies of books, which would have to be recalled in order to replace the wrong CMI printed inside *i.e.* a nearly impossible task, amending electronically distributed books on customs software platforms (Logos, Kindle etc.) is a relatively easy operation. Once the CMI is updated on the distribution servers, the update can be pushed to the relevant users who have downloaded the affected title or the title is updated with the next version upgrade of the software platform.

| | |
|---|---|
| DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 6 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>701 5th Avenue, Suite 2100<br>Seattle, WA  98104<br>Telephone: (206) 695-5100<br>Facsimile: (206) 689-2822 |

19. Mr. Bob Pritchett, the CEO of Faithlife "at all times relevant … exercised control and derived financial benefit," *Hyowon Elecs., Inc. v. Eron, Inc*. therefore "one may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Id*. at 1162 (*citing Shapiro, Bernstein Co. v. H.L. Green Co*., 316 F.2d 304, 307 (2d Cir. 1963))[5] and this is so "even in the absence of actual knowledge that the copyright monopoly is being impaired." *Shapiro, Bernstein Co. v. H.L. Green Co., supra*, at 307.

20. Faithlife "claims to be the largest developer of Christian study with its software technology being used in more than 210 countries in a dozen languages" (SAVC ¶15) and "is a sophisticated and successful company, with offices in three (3) US states and Mexico, with over 400 employees and estimated revenues over $72 million per year" (SAVC ¶16). "The level of sophistication of the defendant in business is an entirely proper means of determining whether or not his infringement was innocent. *See Warner,* 877 F.2d at 1126" *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35-36 (2d Cir. 1990)[6]

21. In its Motion, Faithlife through its US attorneys makes numerous analyses on Irish and German law. It is to be noted that in its prior Motion to Dismiss (Dkt. No 41), Faithlife based its claims on Ireland's Copyright and Related Rights Act, 2000 (Dkt. No. 41, Pgs. 7, 23), *i.e* Faithlife's attorneys retrospectively applied the 2000 Act to 1955-1957 and this was pointed out to Faithlife in the meet and confer correspondence prior to this Motion.

---

[5] https://casetext.com/case/shapiro-bernstein-co-v-hl-green-company
[6] https://casetext.com/case/dc-comics-inc-v-mini-gift-shop

DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 7

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

22. For the German contracts based on German law (SAVC, Exh. 2, Pgs. 12-19), Faithlife states that it "is not relevant here" (Motion, Pg. 7, Footnote 1.), interprets that the contract conveys "limited rights" (Motion, Pgs. 2, 7, 8) and applies the US Ninth Circuit explanation of exclusive rights based purely on the Google translations of the contracts provided by Baronius.

23. Baronius also explained to Faithlife on two occasions in a meet and confer correspondence that "Bischöfliches Seminar Eichstätt, Collegium Willibaldinum" and "Seminary of the diocese of Eichstätt" are one and the same entity. Despite the detailed explanation, Faithlife decided to claim in its Motion that the two entities are different (Motion, Pg. 4) only to support its claim and to waste the Court's and Baronius' time.

24. Baronius obtained the rights to the *Fundamentals* translation from Mercier Press by Assigment of Copyright in 2010 (SAVC, Exh. 3). In 2018, Paul Kejik and Tom Healy of Baronius Press visited Mercier Press and met with Sharon O'Donovan and a former chairmen of Mercier Press Mr. John Spillane and amongst other things discussed *Fundamentals*. Mr. John Spillane, who had joined Mercier Press in the 1960s as an accountant confirmed that Mercier Press always owned the rights to their translations.

25. Faithlife published an English language derivative of *Grundriss*. The only exclusive license to publish such derivative was granted to Baronius. The 11th edition of *Grundriss* comprises the copyright of all prior editions of *Grundriss* and as such Baronius was given the exclusive rights to publish *Grundriss* in English. Any prior translations, such as the original 1955 translation based on either 1st or 2nd *Grundriss* edition, or the revised 1957

DECLARATION OF PAVEL KEJIK IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S RULE
12(B)(6) MOTION TO DISMISS - 8

GORDON REES SCULLY
MANSUKHANI, LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

translation based on 3rd *Grundriss* edition that Faithlife published are both based on prior *Grundriss* editions and therefore are included in the exclusive rights Baronius was granted.

26. Faithlife, also fails to mention that the contract for the exclusive licenses for the English language edition of *Grundriss*, *i.e.* the 1953 contract between Verlag Herder and Mercier Press (SAVC, Exh. 3, Pgs. 4-5) and the 2009 contract between Nova et vetera and Baronius Press (SAVC, Exh. 2, Pgs. 13-15) were both created under German law and both have a requirement for the English translation to be submitted to the licensor for approval. It is not, as Faithlife claims, a limitation of the license granted, but rather a common requirement by German copyright holders.

27. Faithlife interprets the German contract under the US law and adds the Ninth Circuit explanation. (Motion, Pg. 11). However, the Ninth Circuit explanation gives an example about two different rights of the work, *i.e.* Reproduction Right and Adaptation Right. The Reproduction Rights can indeed be "chopped up" into exclusive licenses for the hardback, paperback or electronic version for example, but that is not the case here. As the contract states, Nova et vetera granted the "exclusive license to translate and publish" *Grundriss* of the 11th edition. (SAVC, Exh. 2, Pgs. 13-15). The 11th edition of *Grundriss* comprises the copyright of all prior editions of *Grundriss* and as such Baronius was given the exclusive rights to publish *Grundriss* in English. Any prior translations, such as the original 1955 translation based on either 1st or 2nd *Grundriss* edition, or the revised 1957 translation based on 3rd *Grundriss* edition that Faithlife published are both based on prior *Grundriss* editions and therefore are included in the exclusive rights Baronius was granted.

DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 9

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

28. Moreover, the exclusive license between the Seminary and Nova et vetera does state: "*In light of the controversy surrounding the English edition in the 1960s, the publisher nova & vetera e.k. to ensure that the old version of the text in the former form is by no means reused.*" (SAVC, Exh. 2, Pg. 12) and the same right has been passed on by Nova et vetera to Baronius. It is therefore the duty of Baronius "*to ensure that the old version of the text in the former form is by no means reused.*"

29. Faithlife claims that Baronius' allegations are "implausible because they are directly contradicted by Baronius' own factual allegations" (Motion, Pg. 21) and in order to support its argument Faithlife selectively chose only the allegations that support its narrative, flagrantly leaving out allegations that do not fit their story *i.e.*:

> **(Motion, Pg. 21)**
> But these allegations are especially implausible because they are directly contradicted by Baronius's own factual allegations. Specifically, Baronius alleges that:
> - Faithlife published *Fundamentals* for two months—from April 25, 2019 to June 26, 2019. SAC ¶¶ 49, 51, 55.[7]
> - Faithlife voluntarily stopped publishing *Fundamentals* on its own six months before Baronius contacted Faithlife. SAC ¶ 55.

30. Faithlife did not "*voluntarily pulled it six months before being contacted by Baronius*" (Motion, Pg. 1) but removed the work from distribution because it learned of its "*new copyright holder*" (SAVC ¶55).

31. Faithlife continues with the bullet point arguments (Motion, Pg. 21):

> - On April 24, 2019—the same day *Fundamentals* first was published— Faithlife stated in a public forum that "Verbum still doesn't have rights

---

[7] Note that paragraph 49 incorrectly states March—this appears to be a typo as the screenshot in the same paragraph shows April 24th, and the remaining factual allegations in the SAC state April.

DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 10

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

to produce this, but we are going to revisit the rights situation with both the German publisher (Herder) and a newer U.S. publisher (Baronius) to see if we can get this licensed." SAC ¶ 55.

- When Faithlife ceased publishing *Fundamentals*, it posted on a public forum that it had learned the CMI was incorrect. *Id*. Specifically, Faithlife publicly stated it had "learned more recently—and definitively—that the book has a new copyright holder" which was why "we had to take the book down (again)." *Id*. Faithlife also stated that it was attempting to work with that new copyright holder (Baronius) to license the book—in other words, affirmatively correcting the copyright information and publicly stating that Baronius was the correct copyright holder. *Id*.

32. The posts by Craig St Clair of Faithlife, in date order are listed below and show how Faithlife purposively omitted the one from April 25, 2019 twisting the real version of the events.

| April 24, 2019 | "Sorry to be the bearer of bad news, but this was inadvertently turned to live as part of another Logos project. Verbum still doesn't have the rights to product this, but we are going to revisit the rights situation with both the German publisher (Herder) and a newer U.S. publisher (Baronius) to see if we can get this licensed." (SAVC ¶50) |
|---|---|
| April 25, 2019 | "Upon further review and discussion on the product team, this text [*Fundamentals*] can be made available for sale. Whenever there is a doubt about the rights of a given title, we will always pull it from Verbum.com [i.e., Defendant's website] until we can get clarity. I'm just happy to report that we got clarity on this title MUCH more quickly than we usually do." (SAVC ¶51) |
| June 26, 2019 | "We learned more recently--and definitively--that the book has a new copyright holder. We are attempting to work with them to license the book." (SAVC ¶55) |

33. Faithlife mentioned Baronius as the "*newer U.S. publisher*" and did not state that Baronius was the "*new copyright holder*" therefore in no way it was "*in other words, affirmatively correcting the copyright information and publicly stating that Baronius was the correct copyright holder.*" as it patently avoided stating who the copyright holder was. Furthermore, "Plaintiff did not receive any correspondence from Defendant to license or sell its

DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 11

GORDON REES SCULLY MANSUKHANI, LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

rights to *Grundriss English Edition* or *Fundamentals* after the settlement of Defendant's previous infringement in January 2015." (SAVC ¶59)

34. In the last bullet point on the same page (Motion, Pg. 21) Faithlife states:

- The allegedly "false CMI" is simply the copyright information from the version of the book that Faithlife scanned—the Second Edition from 1957. SAC Exh. 9, Dkt # 48-10; FAC Exhs. 7 and 8, Dkt. # 13-8, 13-9.

35. The CMI is not "simply" any information a publisher decides to include. If the title is in the public domain, the publisher puts such information in the CMI (SAVC, Exh. 8), if the book has copyright holder it is mentioned in the CMI (SAVC, Exh. 9). "*[Faithlife] team members made a good faith effort to determine the copyright status and ensure the title was in the public domain, using what they thought was a complete and correct process*" (SAVC ¶70; SAVC, Exh. 9, Pg. 9) "*under the mistaken belief that the initial 28-year protection under the 1909 Copyright Act for a work published in the 1950s would have lapsed long ago*" (Motion, Pg. 5) yet, Faithlife did not provide *Fundamentals* with CMI stating "Copyright – Public Domain" as Faithlife does with other public domain titles in its portfolio (Dkt. No. 48.9, Exh. 8). The 17USC §1202(c)(3) specifically defines the CMI as "The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright."[8] therefore Faithlife's ignorance of the law is not an excuse.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

---

[8] https://www.law.cornell.edu/uscode/text/17/1202

DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 12

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated and executed this 12th day of June 2023 at city of Nový Jičín in the Czech Republic.

_____
Pavel Kejik, Director
Baronius Press, Ltd.

| | |
|---|---|
| DECLARATION OF PAVEL KEJIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS - 13 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>701 5th Avenue, Suite 2100<br>Seattle, WA 98104<br>Telephone: (206) 695-5100<br>Facsimile: (206) 689-2822 |

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Nicholas F. Lenning, WSBA #54740
Ashley E.M. Gammell, WSBA #50123
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 623-7580
Fax: (206) 623-7022
Email:
nicholas.lenning@klgates.com
ashley.gammell@klgates.com

Attorneys for Defendant Faithlife LLC


Dated:   June 12, 2023

By:   */s/ William M. Hughbanks*
William M. Hughbanks WSBA # 45562

CASE NO. 2:22-CV-01635-TL - 1

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

1213044/77729163v1