UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARONIUS PRESS LTD,<br><br>      Plaintiff,<br> v.<br><br>FAITHLIFE CORPORATION,<br><br>      Defendant. | CASE NO. 2:22-cv-01635-TL<br><br>ORDER DENYING MOTION TO DISMISS |

   This case involves claims of copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202 *et seq.*, related to three written works: (1) a German-language religious text titled Grundriss der katholischen Dogmatik by Ludwig Ott, originally published in 1952; (2) an English-language translation of that work called Fundamentals of Catholic Dogma authored by Dr. Patrick Lynch, originally published in 1955; and (3) a revised English-language edition produced and published by Plaintiff Baronius Press, Ltd. ("Baronius") in 2018. The matter is before the Court on Defendant Faithlife LLC's Motion to Dismiss (Dkt. No. 55) Plaintiff's Second Amended Complaint ("SAC," Dkt. No. 48). Having

considered the relevant record, including the SAC, the motion, Baronius's response (Dkt. No. 59), and Faithlife's reply (Dkt. No. 61), the Court DENIES Defendant's motion to dismiss.

## I. BACKGROUND

Baronius is a small publisher based in the British Isles that specializes in traditional Catholic books and Bibles, including updating and republishing titles that have gone out of print. Dkt. No. 48 ¶¶ 6, 14. Faithlife is a U.S.-based software company that produces technology that provides access to Catholic study tools and materials, including religious texts. *Id.* ¶¶ 7–8, 15–16.

In 1952, Germany-based publisher Verlag Herder & Co. published Grundriss der katholischen Dogmatik ("Grundriss"). *Id.* ¶ 28; Dkt. No. 48-3 at 2–5. In 1953, Verlag Herder entered into an agreement with Irish publisher Mercier Press to publish an English-language translation of Grundriss. Dkt. No. 48-4 ¶ 2–5. Mercier Press then commissioned Dr. Patrick Lynch to author the translation of Grundriss entitled Fundamentals of Catholic Dogma ("Lynch Translation"), which Mercier Press originally published in 1955. Dkt. No. 48 ¶ 36; Dkt. No. 48-4 at 6–7.

All rights in Grundriss eventually passed from Ludwig Ott to his sister, Regina Ott, when she inherited his estate upon his death in 1985. Dkt. No. 48 ¶ 30. In turn, she gifted Ludwig's entire estate to Bischofliches Seminar St. Willibald in Eichstätt, Germany ("Seminary of Eichstätt"). *Id.*; Dkt. No. 48-3 at 6–8.

Although the German copyright for Grundriss never lapsed, the work entered the public domain in the U.S. because certain formalities were not complied with under then-current U.S. copyright law. Dkt. No. 48 ¶ 31. For similar reasons, the Lynch Translation also entered the public domain in the U.S., even though the Irish copyright never lapsed. *Id.* ¶¶ 37, 39. In 1996, the U.S. copyrights for both works were restored pursuant to the Uruguay Round Agreements Act ("URAA"). *Id.* ¶¶ 31, 39.

ORDER DENYING MOTION TO DISMISS - 2

In 2004, the Seminary of Eichstätt granted German publisher Nova & Vetera e.K. ("Nova") exclusive publishing rights to Grundriss. *Id.* ¶ 32; Dkt. No. 48-3 at 11–12. In 2008, the publishing agreement with Nova was supplemented to include the preparation and distribution of a newly revised English-language edition of Grundriss. *Id.*; Dkt. No. 48-3 at 11–12. In its agreement with Nova, Seminary of Eichstätt specifically noted "the controversy surrounding the English edition in the 1960s" (*i.e.*, the Lynch Translation), and its goal of ensuring that "the old version of the text in the former form is by no means reused." *Id*. Nova then contracted with Baronius to prepare and publish a newly revised English-language edition ("Revised Translation"), which was eventually published in 2018.[1] Dkt. No. 48 ¶¶ 33, 44; Dkt. No. 48-3 at 13–19.

In 2010, Baronius entered into a Copyright Assignment Agreement with Mercier Press to acquire all rights in the Lynch Translation. Dkt. No. 48 ¶ 40; Dkt. No. 48-4 at 8. In 2013, Baronius confronted Faithlife about copies of the Lynch Translation it believed had been sold to consumers through Faithlife's software between 2011–2013. Dkt. No. 48 ¶¶ 45–46. In 2014, Baronius formally registered the U.S. copyright for the Lynch Translation. *Id.* ¶ 41; Dkt. No. 48-4 at 9–16. Around the same time, Baronius also registered the U.S. copyright for Grundriss on behalf of Seminary of Eichstätt. Dkt. No. 48 ¶¶ 34–35; Dkt. No. 48-3 at 20–25. In 2015, Baronius and Faithlife entered into a negotiated settlement regarding the earlier alleged infringement. Dkt. No. 48 ¶ 47.

Then, for a short time in 2019, the Lynch Translation was again made available through Faithlife's online forum. Dkt. No. 48 ¶¶ 49–55. The version that was made available during this time also allegedly contained false copyright management information ("CMI"), which Baronius

---

[1] A 5-year licensing agreement between Nova and Baronius was originally entered into in 2009, renewed in 2012, and then extended in 2015. *See* Dkt. No. 48-4 at 13–19.

claims Faithlife knew was false and intentionally attempted to conceal. *Id.* ¶¶ 55–59, 67–76, 81–82. Baronius further alleges that Faithlife's activities have cause irreparable harm to its rights in the related works. *Id.* ¶¶ 77–80. Upon learning of this new potentially infringing activity, Baronius again confronted Faithlife. *Id.* ¶¶ 60–63. This lawsuit followed.

## II.  LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 672.

## III.  DISCUSSION

As an initial matter, Faithlife appears to admit that its unlicensed republication of the Lynch Translation in 2019 was an infringing act. Dkt. No. 55 at 5 (noting that its "publication of

*Fundamentals* was accidental and without intent . . . . under the mistaken belief that" the work had entered the public domain). Instead, Faithlife argues that Baronius has failed to plausibly assert ownership of a right from which relief for the alleged infringement may arise under U.S. copyright law or the DMCA. Dkt. No. 55 at 5–18. Further, even if Baronius can establish ownership of a right that was infringed, Faithlife argues that the DMCA claims fail because there are no facts alleged to plausibly establish the requisite intent element of the claims. *Id.* at 18–23.

**A.     Copyright Infringement**

Baronius asserts two causes of action for infringement under U.S. copyright law. Dkt. No. 48 ¶¶ 90–115. For these claims to survive, Baronius must plausibly assert "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

       **1.     Infringement of the Grundriss Copyright**

Baronius appears to allege ownership of the Grundriss copyright. Dkt. No. 48 ¶¶ 25–27, 77. While the subtext printed under the First Claim for Relief in the SAC refers specifically to "Title – *Grundriss der katholicschen Dogmatik*," the allegations for the claim focus primarily on the Revised Translation, rather than the Grundriss copyright.[2] Dkt. No. 48 at 19. Further, Plaintiff only alleges that Defendant "has reproduced and distributed at least 75 copies of *Grundriss English Edition* [the Revised Translation] and *Fundamentals* [the Lynch Translation] *with false CMI*." *Id.* ¶ 79 (emphasis in original). However, both Parties raise arguments in the pleadings that go to infringement of the Grundriss copyright without complete clarity about whether they

---

[2] Other than listing the title in the subtext of the section header for the First Claim for Relief in the SAC, the only reference to Grundriss in the first count appears to the Court to be a background sentence providing context that Grundriss "is original work or authorship subject to the full protection of the U.S. copyright laws." Dkt. No. 48 ¶ 91. The First Claim otherwise only discusses the Revised Translation. *Id.* ¶¶ 92–97.

are referring to the original German work or the Revised Translation. Therefore, the Court will address Plaintiff's claim of ownership rights in Grundriss out of an abundance of caution and for clarity in the case going forward.

Documents included by Plaintiff with the SAC establish that the owner of the U.S. copyright for Grundriss is Seminary of Eichstätt. Dkt. No. 48-3 at 20-25. In 2004, Seminary of Eichstätt entered into a publishing agreement with Nova—who is not a party to this action—which granted Nova exclusive publishing rights to the German-language version of Grundriss[3] and was later supplemented to include the right to commission a revised English-language translation for publication. Dkt. No. 48-3 at 12, *see also* Dkt. No. 55 at 6–7. Baronius appears to assert copyright rights in Grundriss by and through a subsequent publishing contract between itself and Nova. Dkt. No. 59 at 5.

Baronius fails to plead a plausible claim for ownership of any rights in Grundriss. "[O]wnership of a copyright may be transferred in whole or in part . . . . [and the] owner of any particular exclusive right is entitled, *to the extent of that right*, to all of the protection and remedies accorded to the copyright owner by this title." 17 U.S.C. § 201(d) (emphasis added). This statutory provision has been interpreted as providing that an exclusive licensee may be "treated as [a] copyright owner[] for the purpose of protection and remedy under the Copyright Act." *E.g.*, *Getty Images (U.S.), Inc. v. Microsoft Corp.*, 61 F. Supp. 3d 301, 304 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 70 (2d Cir. 2001), *as clarified on denial of reh'g*, 283 F.3d 502 (2d Cir. 2002), *and abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)); *see also* 3 Melville B.

---

[3] A copy of the full publishing agreement between Nova and Seminary of Eichstätt is not included with the documents attached to the SAC. Plaintiff describes the scope of the agreement related to the original German version of Grundriss as granting Nova "exclusive controlling rights" (Dkt. No. 48 ¶ 32), which the Court accepts as true for purposes of this motion.

ORDER DENYING MOTION TO DISMISS - 6

Nimmer & David Nimmer, Nimmer on Copyright § 10.02 (2023) ("Nimmer on Copyright") ("[T]he protection and remedies available to the copyright owner of the work may also be claimed by the owner of particular rights under an exclusive license."). But "[e]xtending to the licensee the 'protection and remedies' available to the licensor [does not] create[] a separate copyright." 3 Nimmer on Copyright § 10.02. The licensee may seek "protection and remedies" only for the "particular exclusive right" granted by the licensor and only to the extent of that right. *Id.; accord* 17 U.S.C. § 201(d)(2). Per its agreement with Nova, Baronius describes itself as "the exclusive *licensee* of the exclusive right to publish" a new English-language translation of Grundriss. Dkt. No. 59 at 5 (emphasis added); *see also* Dkt. No. 48 ¶ 33–44 (asserting that the agreement granted Baronius "the exclusive right to reproduce, adapt, and distribute . . . . [a] new fully revised and updated edition" of the English-language translation of the original German work). Thus, Plaintiff is not the U.S. copyright holder of Grundriss, but instead owns an exclusive license to produce and distribute a separate translated work based upon the original. *See* Dkt. No. 59 at 5; *see also* Dkt. No. 48-3 at 13-25.

Consistent with the documents attached to the SAC, Baronius was explicitly granted an exclusive license to "reproduce, adapt, and distribute" a *translated version* of Grundriss only, *i.e.*, the Revised Translation. *See* Dkt. No. 59 at 5; *see also* Dkt. No. 48-3 at 13-25. Nonetheless, because Nova was granted "exclusive controlling rights" (Dkt. No. 48 ¶ 32) to Grundriss, Baronius appears to argue that the scope of its license is coterminous with ownership of the registered copyright for Grundriss. Dkt. No. 59 at 5. Baronius is incorrect. The license agreement between itself and Nova clearly distinguishes the original Grundriss work (defined in the contract as "the Work") from the translated work that is the subject of the granted license (defined therein as "the Licensed Edition"). Dkt. No. 48-3 at 16. Further, Nova explicitly reserved "All Rights in the Work [(*i.e.*, Grundriss)], other than those specifically granted." *Id.*

ORDER DENYING MOTION TO DISMISS - 7

Other than Baronius's own conclusory allegations that it is "the owner of all rights under copyright in" Grundriss (Dkt. No. 48 ¶¶ 25–27, 77), which contradict both the plain language of the licensing agreement and its own description of the licensing terms, there are no alleged facts in the SAC that establish ownership of any protectable rights in the original Grundriss work.

### 2. Infringement of the Exclusive License in the Revised Translation

Despite its mistaken belief regarding the scope of its exclusive license, Baronius has made sufficient factual allegations of infringement of its exclusive license to publish the Revised Translation. Specifically, Baronius alleges that Faithlife "reproduced and distributed [the Revised Translation], and/or a substantially similar reproduction thereof." Dkt. No. 48 ¶ 96; *see also id.* ¶¶ 79–80 ("Upon information and belief, Defendant has reproduced and distributed at least 75 copies of [the Revised Translation] and [the Lynch Translation] . . . ."). Taking these factual allegations as true, Plaintiff plausibly asserts the second element of its infringement claim as related to the exclusive license to publish the Revised Translation.

Faithlife argues that Baronius fails to plausibly assert its infringement claim as to the Revised Translation because all of the alleged infringing acts involved the Lynch Translation only. Dkt. No. 55 at 9. Faithlife points to contradictory allegations in the SAC and other documents in the record, as well as comparative differences between the SAC and previously filed versions of the complaint, that appear to corroborate Faithlife's claim that it only ever republished the Lynch Translation in 2019 and never reproduced any part of the Revised Translation. *Id.* at 9–10. Logically, reproduction of a text originally published in 1955 could not possibly infringe on a work that was first published in 2018.

Nonetheless, at this stage, the Court must accept as true Baronius's allegations regarding Faithlife's infringing publication of the Revised Translation and cannot test the credibility of those claims. While the Court agrees that the corroborating allegations and documents in the

record appear to support the claim that Faithlife only republished the Lynch Translation in 2019, Baronius explicitly makes the allegation in the SAC that Faithlife also published the Revised Translation "[u]pon information and belief" (Dkt. No. 48 ¶ 79), which is sufficient to survive a motion to dismiss. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (facts in a complaint may be alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible") (citation and internal quotation marks omitted). Indeed, Plaintiff specifically amended its complaint to add that it believed Defendant had reproduced and distributed copies of the Revised Translation. *Compare* Dkt. No. 13 ¶ 52 *with* Dkt. No. 48 ¶¶ 78–79.

Rule 11 requires that a representation upon "information and belief" be "formed after an inquiry reasonable under the circumstances" and "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). The Court presumes that Plaintiff conducted the required reasonable inquiry regarding Faithlife's alleged publication of the Revised Translation prior to Plaintiff verifying the contents of the SAC, and its counsel signing and filing it. If it can be shown that the representation was unreasonable under the circumstances and was unlikely at the time to be supportable even with additional discovery, then Baronius and its counsel would be susceptible to Rule 11 sanctions upon an appropriate motion.

3. **Infringement of the Lynch Translation Copyright**

Baronius plausibly alleges ownership of the copyright for the Lynch Translation. Specifically, Baronius alleges and includes corroborating documents that show it secured an assignment of the copyright from Mercier Press in 2010 and registered the U.S. copyright in 2014. Dkt. No. 48 ¶¶ 36–42; *see also* Dkt. No. 48-4 at 8–16.

Faithlife disputes whether the U.S. copyright was restored to Mercier Press in 1996 as a matter of law and argues that the true holder of the copyright upon restoration was Dr. Lynch. Dkt. No. 55 at 13–17. Because Baronius has not alleged any facts to establish that Dr. Lynch ever relinquished his rights in the work after 1996, Faithlife argues that Baronius has failed to plausibly assert a legally cognizable ownership interest in the copyright. *Id.* In opposition, Baronius asserts that Faithlife's legal argument is inappropriate for a Rule 12(b)(6) motion, and instead argues that the Court must accept as true its assertions as to the legal ownership of the copyright. Dkt. No. 59 at 6–7.

      a. ***Faithlife's legal argument is appropriate for its motion to dismiss.***

While the Court must accept properly pleaded factual allegations as true, that mandate does not extend to legal assertions. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Thus, Faithlife appropriately challenges Baronius's legal assertion that Mercier Press, as opposed to Dr. Lynch, was the legal copyright holder in the Lynch Translation at the time it was assigned to Baronius. If Faithlife's legal assertion is correct, then dismissal of the claim might be appropriate if, even accepting the facts included in the SAC as true, Baronius could not establish ownership rights in the Lynch Translation.

      b. ***Baronius pleads sufficient facts to survive the motion to dismiss.***

Although Baronius appears to misapprehend the applicable standard on Rule 12(b)(6) motions, the Court nonetheless finds that Baronius has alleged sufficient facts to state a plausible claim of infringement. Faithlife argues only that Baronius cannot establish legal ownership in the Lynch Translation copyright. Faithlife asserts that in 1996, per the URAA and Irish copyright law, the U.S. copyright for the Lynch Translation was automatically restored to the "author," who is undisputedly Dr. Lynch, and not to Mercier Press. Dkt. No. 55 at 13–16. Faithlife might

be correct regarding its interpretation of the relevant laws, but that in and of itself does not defeat Baronius's factual assertion that Mercier Press was the legitimate copyright holder in 2010.[4] Dkt. No. 48 ¶ 40; *see also* Dkt. No. 48-4 at 8 (the 2010 Copyright Assignment Agreement wherein Mercier Press "represents and warrants . . . that [it] is the owner of the work and is authorized to assign copyright to the work"). Baronius has therefore met the minimal pleading standard required to plausibly allege ownership of the copyright for the Lynch Translation.

Thus, for the reasons stated above, the Court DENIES Faithlife's motion to dismiss Baronius's infringement claims as to both the Lynch Translation and the Revised Translation.

**B.   DMCA Violations**

A person injured by copyright infringement may also raise a claim for any acts that violate the DMCA. 17 U.S.C. § 1203(a). Baronius asserts causes of action under the DMCA that flow from its two infringement claims. Dkt. No. 48 ¶¶ 116–49. Specifically, the DMCA states that a party may be held liable for providing or distributing false CMI "knowingly and with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a).[5]

Because Baronius's infringement claims survive this motion, the Court need not address Faithlife's arguments regarding lack of injury. *See* Dkt. No. 55 at 17–18. In the alternative, Faithlife argues that Baronius alleges only conclusory recitations of the required intent element of the claims that are insufficient to meet the pleading standard. Dkt. No. 55 at 18–23. The Court disagrees. The pleading standard is not nearly as stringent as Faithlife implies. While some of

---

[4] The Court acknowledges that Baronius specifically claims that the copyright was restored directly to Mercier Press in 1996 per the URAA. Dkt. No. 48 ¶ 39. The Court need not, and does not at this time, resolve the legal question regarding application of the URAA. Instead, the Court recognizes that even if Faithlife's interpretation of the relevant law is correct, Baronius's mistaken legal assertion would not preclude the possibility that Mercier Press was able to assign the copyright to Baronius in 2010 as alleged, evidence of which could potentially be uncovered with further investigation or discovery.

[5] Although Baronius does not indicate in the SAC the specific DMCA provision under which its claims arise, the Parties appear to agree that the claims are asserted under Section 1202(a). Dkt. No. 55 at 18 n.10; Dkt. No. 59 at 11.

Baronius's allegations in the SAC may include similar language as the statute, Baronius also supplements these allegations with specific factual assertions material to its claims in this case. For example, Baronius asserts acts of concealment and false statements allegedly attributable to Faithlife, which, if taken as true, raise a plausible inference of intentionality. *See* Dkt. No. 48 ¶¶ 49–82. Coupled with the undisputed factual assertions regarding Faithlife's alleged prior knowledge regarding the falsity of the published CMI,[6] the Court finds that Baronius meets the minimal pleading standard for asserting the intentionality element of its DMCA claims.

Consequently, the Court DENIES Faithlife's motion to dismiss Baronius's DMCA claims.

### IV.   CONCLUSION

The Court DENIES Defendant's motion to dismiss. Dkt. No. 55.

Dated this 31st day of January 2024.

Tana Lin
United States District Judge

---

[6] Faithlife explicitly states that it is not challenging Baronius's allegations as to the knowledge element of the DMCA claims. Dkt. No. 55 at 19 n.11. Thus, the Court takes the knowledge-related allegations as true and undisputed for the purposes of this motion.